## HAGUE ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7.

Circuit Court of Appeals, Second Circuit.

Jan. 19, 1943.

776

Before L. HAND, SWAN, and CHASE, Circuit Judges.

Fred R. Angevine, of New York City, (Aaron H. Marx and Richard O. Merrick, both of New York City, of counsel), for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Warren F. Wattles, Sp. Assts. to Atty. Gen., for respondent.

CHASE, Circuit Judge.

The executors of the will of Robert Lyons Hague, who died on March 8, 1939, while a resident of the City of New York, have brought this petition to review deficiencies in the income taxes of the decedent for each of the calendar years 1936, 1937, 1938. He filed returns for each of those years in either the second or the third district of New York. The Commissioner, having discovered that the decedent had in each of those years made substantial deposits in two personal checking accounts he maintained in two banks in New York City, determined deficiencies by including in his gross income for each year a substantial portion of such deposits which he had not reported as income. The Tax Court redetermined the deficiencies by excluding from gross income for each year all of the deposits which were identified as coming from nonincome producing sources and including all the remainder which had not been reported in the returns filed. Whether or not that method of redetermining the deficiencies was erroneous is the sole question for review.

Hague had filed petitions for redeterminations but died before they were heard and his executors who went on with the hearings in his behalf were considerably handicapped by the fact that he kept no books of account. His check stubs, not very illuminating, were about all the records he kept of substantial deposits and withdrawals from the banks. It is true, as has been argued by the petitioners, that proof that bank deposits were made is not enough to show the receipt of income and, a fortiori, of taxable income but the circumstances surrounding the deposit and withdrawal of money in and from bank accounts may well give such character to the transactions that the Commissioner would be justified in determining that some, or all, of the deposits were income. When that is so the Commissioner's determination is not arbitrary or capricious, and then the taxpayer has the burden in the Tax Court to show that the Commissioner's determination was wrong. Wickwire v. Reinecke, 275 U.S. 101, 48 S.Ct. 43, 72 L.Ed. 184; Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212. We think that was the situation in the Tax Court as to each of these deficiencies and that when, in this setting, everything identifiable was excluded by the Tax Court from the decedent's gross income for each year, the residue of the bank deposits not previously reported and remaining unidentified was properly redetermined to be income on the ground that the petitioners had not shown the action of the Commissioner to have been wrong. That they may have been unable so to do because Hague kept inadequate records and was dead, is a possibility of course, but so is the contrary because no one can tell what complete and correct records would have shown about that or what an examination of Hague himself would have disclosed. However that may be, the petitioners are in the same position whether their failure to show error was due to impossibility or to some other reason. See Burnet v. Houston, 283 U.S. 223, 228, 51 S.Ct. 413, 75 L.Ed. 991.

The material facts are that the decedent in all three years was an officer of the Standard Oil Company of New Jersey who was paid, less deductions of over $6000 in each year for deposit to his credit in the Employees Thrift Fund, a salary of $45,454.56 in 1936; one of $50,060.04 in 1937; and one of $55,000.08, with additional compensation of $12,072.95, in 1938. He received from his company in 1936, $61,000, for strike expenses for which he made no accounting; $31,849.40 for traveling expenses and $3,838.32 to .reimburse him for other expenditures he made for the company but apparently only $7,500 of these receipts were deposited in any bank. In 1937 he received from his company for similar reasons, in addition to his salary, amounts aggregating $168,058 of which he ·deposited not over $49,277; and in 1938, $50,191, practically all of which he deposited in the banks together with about $7,250 of what he received for traveling expenses. He borrowed from banks and deposited $66,877.41 in 1936; $77,129.65 in 1937; and $106,869.49 in 1938. In 1938 he deposited $2,153.33 which he received in part as the payment of a loan; in part for damages on account of an injury to his yacht; and in part for collections which he paid over to the "Greater New York Fund." In 1936 he deposited $9,510.70 which he received for stock he sold and in 1937, $11,654.35 which he also got from stock sold. In all three years he borrowed money from his brother and deposited it. In 1936 the amount was $39,000; in 1937 it was $19,800; and in 1938 $41,715. And on the same day or soon after borrowing from his brother, he deposited a like amount in his brother's account at ·another bank. In 1936 he received from his wife and deposited $32,750. He was accustomed to carry substantial amounts of cash to use as he pleased and upon going home at night would at times give his butler sums in varying amounts up to $10,000 to keep for him until morning. He would sometimes hand his chauffeur several thousand dollars in cash to be deposited and it was argued that much of such money was the remainder of sums received when he cashed checks and was, when put in the banks, really the redeposit of his own money but that may or may not have been so and whether it was as well as the aggregate amount of such deposits was left to surmise. Though his receipts were shown only as above outlined, Hague deposited in his two checking accounts over a half million dollars in 1936; more than four hundred thousand dollars in 1937; and over a half million dollars in 1938. He lived expensively and withdrew and disposed of so much that he accumulated nothing and died insolvent. His checking accounts were active and were often overdrawn though he made deposits sufficient to maintain them. Many of his deposits and withdrawals were in cash. In 1936 he wrote checks aggregating $309,450.23 to designated payees mostly for personal expenses; in 1937 such checks amounted to $291,631.97; and in 1938 to $377,543.67. He cashed checks amounting to $213,424.69 in 1936; to $127,003 in 1937; and to $143,362.17 in 1938.

The net taxable income reported by Hague in the joint return he filed with his wife for 1936 was $24,593.69. The Commissioner determined a deficiency by including an additional $343,192.61 and the Tax Court redetermined the deficiency by deducting all additions which were shown to have been other than income and reduced the increase to $266,883.28. In 1937 the net taxable income reported was $47,718.19; the deficiency determined by the Commissioner was based on the addition of $94,456.19 to the reported income; and was redetermined by the Tax Court in the same amount. In 1938 the net taxable income reported was $60,706.18; the Commissioner determined the deficiency by adding $373,373.96 and, as redetermined by the Tax Court, the deficiency was computed on the addition of $240,407.28 to reported income.

Under the circumstances shown the determinations of the Commissioner were based on inferences properly drawn from the facts proved by the evidence and were therefore entitled to be accepted as prima facie correct in the proceedings in the Tax Court. There was the evidence that Hague used large amounts from his deposits to pay the debts he contracted in living the life he lived. It has not been uncommon to use bank accounts as evidence of the receipt of income. See, Mauch v. Commissioner, 3 Cir., 113 F.2d 555; Calafato v. Commissioner, 3 Cir., 124 F.2d 187; Hoefle v. Commissioner, 6 Cir., 114 F.2d 713. While such evidence, of course, is not conclusive, deposits in checking accounts are so often made up of income that where, as here, that is the fair inference to be drawn from the facts it was proper to give it effect. One conse-

quence is that the determinations of the Commissioner were not arbitrary and capricious and so gave adequate support for the computation of the tax unless the taxpayer could show them to be wrong. Lucas v. Structural Steel Co., 281 U.S. 264, 50 S.Ct. 263, 74 L.Ed. 848. This does not mean that the taxpayer has the burden of showing the correct amount of the tax. Though proof which shows the Commissioner's determination to be wrong will often show what is right, the taxpayer need never do the latter. Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L. Ed. 623. He must however show in some way at least that the tax imposed is erroneous. The failure to do so in this instance leaves the redeterminations made by the Tax Court those which should be given effect.

Affirmed.