[Civ. No. 13330. First Dist., Div. Two. July 3, 1947.]

JOSEPH P. ROESMAN, Appellant, v. ROSEMOND T. DeHART et al., Respondents.

maximum738

Elmer P. Delany, James H. Himmel and Frank C. S. Pedersen for Appellant.

Carl E. Day and Abraham Setzer for Respondents.

DOOLING, J.—The plaintiff appeals from a judgment refusing to quiet his title to a parcel of real property in San Francisco.

The property was originally owned by Mary Flecchia, a sister of the plaintiff. In 1927, Mary Flecchia conveyed the property to plaintiff. In 1932, Mary Flecchia and her husband borrowed $3,000 from American Trust Company and to secure a promissory note in that amount plaintiff joined with Mary Flecchia and her husband in executing a deed of trust of the property. In 1937, this promissory note was in default. Plaintiff purchased the note from American Trust Company and through trustees substituted at his behest he caused the property to be sold at trustees' sale. The property was bid in by one Joe Allen. Allen was acting in the transaction solely on behalf of plaintiff and on January 25, 1938, Allen conveyed the property to Title Insurance and Guaranty Company at plaintiff's request. The trustees' deed to Allen and Allen's deed to the title company were both recorded on February 4, 1938. Contemporaneously with the delivery of Allen's deed to the title company Allen and the title company executed a "holding agreement" whereby the title company

agreed to hold the property "for the account of the undersigned, and . . . to deal with or convey the said property to whomsoever may be designated by written instructions signed by Joseph P. Roesman. . . ." In 1945, at plaintiff's designation, the title company conveyed the property to plaintiff.

The defendants and respondents, DeHart and Tracy, are judgment creditors of Joe Allen. They recovered a judgment against Allen in 1940, which was reversed on appeal, and a second judgment in the same action in 1943, which has become final. Taking either date the judgment was recovered at a time when the record title to the property here in question was no longer in Joe Allen but in Title Insurance and Guaranty Company, and the beneficial or equitable interest was in the plaintiff. Since the lien of a judgment attaches only to the actual interest of the judgment debtor (*Davis* v. *Perry*, 120 Cal.App. 670 [8 P.2d 514]; *Spear* v. *Farwell*, 5 Cal.App.2d 111 [42 P.2d 391]) defendants would normally acquire no lien upon the property here in suit by virtue of their judgment against Allen.

The trial court, however, found that at the time of the trustees' sale to Allen, Mary Flecchia was demanding that plaintiff reconvey the property to her and was also asserting certain money claims against plaintiff and that the taking of title in Allen was motivated by the fraudulent purpose of concealing from Mary Flecchia plaintiff's ownership of said property and to deprive Mary Flecchia of said property and prevent and discourage her from resorting to it to satisfy her money demands. The court concluded from these findings that plaintiff was barred by the clean hands doctrine from securing any relief in equity.

The findings are attacked by appellant as unsupported. The findings of bad faith depend entirely on inference. Mary Flecchia is dead and her surviving husband and the plaintiff both testified that plaintiff owed her nothing, that he had advanced to her $3,000 or $4,000 in addition to the $3,000 paid by him to purchase the promissory note, none of which was ever repaid, and that plaintiff did not conceal his actual interest in the property after its purchase by Allen. An officer of the title company testified that "it is common practice for title companies to hold—we have thousands of pieces of property that we have no interest in at all." The chief basis of the finding of fraudulent intent is an action commenced by Mary Flecchia against plaintiff on June 16, 1937,

and voluntarily dismissed by her on November 15, 1937, all before the trustees' sale to Allen. We need not decide whether the evidence is sufficient to support the inference of fraud, since we are satisfied that even under the facts as found the judgment should be reversed.

It is the general rule that one who conveys property to another in fraud of creditors cannot recover the property from his fraudulent grantee. (12 Cal.Jur. 1026.) It is otherwise however if the fraudulent grantee voluntarily reconveys to the fraudulent grantor. The rule applicable in such cases was quoted by this court from 27 Corpus Juris 658 in *William-son* v. *Kinney*, 52 Cal.App.2d 98, 103 [125 P.2d 920]:

"While a fraudulent grantee is under no legal obligation to reconvey, it is said that he is under a moral obligation to do so, and all subsequent acts done by him in execution of this duty should be favorably considered in equity, the moral obligation being a valuable and sufficient consideration for a reconveyance. If in fulfillment of his moral obligation he makes a reconveyance, such act will be binding on him, and if the rights of no innocent third person have intervened, the fraudulent grantor will become revested both in law and in equity with the title previously conveyed to his grantee; and the grantee will be estopped from thereafter setting up any claim to the property."

The cases in support of this rule are collected in a note in 89 Annotated Law Reports at page 1168.

As between Allen and the plaintiff, even conceding that plaintiff was motivated by the fraudulent purpose found by the trial court, after Allen's conveyance to the title company to hold in trust for plaintiff, plaintiff under the rule above quoted had the superior right which a court of equity would enforce.

Since the lien of the judgment creditor attaches only to the rights of the judgment debtor logic suggests that if plaintiff's rights in the property would prevail over Allen's they must prevail over those of Allen's judgment creditors. Such is the rule in a majority of the jurisdictions which have considered the question. The cases so holding are collected in the note in 89 Annotated Law Reports above referred to at page 1173 under the following statement:

"While there is some real, or apparent, conflict as to the rights of the original grantor in a fraudulent conveyance after a reconveyance by his grantee as against the latter's creditors, the weight of authority protects him under such circum-

stances. This statement is, of course, subject to the proviso that the creditors in question had obtained no valid lien upon the property prior to the reconveyance.''

We supplement this statement with the following quotations from the cases, indicating the reason for the rule:

''Although the courts will not interfere and aid a fraudulent grantor to enforce the promise to reconvey on grounds of public policy,—that is, to discourage such transactions,—yet if the grantee, in compliance with such agreement, has reconveyed the property to the grantor, such reconveyance will be upheld. Courts of equity recognize that there is a moral obligation resting upon the fraudulent grantee to execute the trust which he has undertaken, and, although they will not enforce its execution, they will uphold it when performed.'' (*Biccochi* v. *Casey-Swasey Co.*, 91 Tex. 259 [42 S.W. 963, 965, 66 Am.St.Rep. 875].)

''In Wait, Fraud. Conv. sec. 398, it is said: 'Though a reconveyance cannot be enforced, the fraudulent vendee is said, in some of the cases, to be under a high moral and equitable obligation to restore the property. The law is not so unjust as to deny to men the right, while it is in their power to do so, to recognize and fulfill their obligations of honor and good faith; and, until the creditors of the vendee acquire actual liens upon the property, they have no legal or equitable claims in respect to it higher than or superior to those of the grantor.' (Citing cases.) There being, then, a moral obligation of the highest type resting upon the son to convey to the father, the discharge of that obligation furnishes ample consideration for such conveyance, and the conveyance, if received in good faith, works no legal fraud upon any party whose rights to the property conveyed are not in law superior to the rights of the father.'' (*Lockren* v. *Rustan,* 9 N.D. 43 [81 N.W. 60, 62].)

''The vendor is merely trustee of the property for the vendee, the real owner thereof, and equity withholds its aid to enforce a reconveyance, not through want of consideration, but as a penalty to repress and prevent frauds. It does not deny the true ownership, but, because of his unclean hands, it refuses to the owner its aid to regain his property. Having regained his property without its aid before the rights of others have attached thereto, it will protect him in it. Creditors who have not given credit on the strength of the property lose nothing thereby, as their debtor never had any real ownership in the property.'' (*Farmers' Bank*

v. *Gould*, 48 W.Va. 99 [35 S.E. 878, 879, 86 Am.St.Rep. 24].)

The precise question has not come before the California courts. *Withrow* v. *National Surety Co.*, 122 Cal.App. 242 [10 P.2d 83], is not in point since the fraudulent grantee's creditor in that case had secured an attachment lien upon the property before its reconveyance to the fraudulent grantor, as noted by the court on page 248. We are satisfied to follow the majority rule as established in other jurisdictions. To do otherwise would be to give the respondents an unexpected windfall based upon an allegedly fraudulent title that passed from their debtor long before their judgment was secured.

Judgment reversed.

Nourse, P. J., and Goodell, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 28, 1947. Carter, J., voted for a hearing.