OPINION. ARUNdell, Judge: Respondent has determined a liability in the amount of $28,099.80 against the petitioner as the transferee of certain assets of her husband, Charles P. Noell. It is agreed that his outstanding income tax liability for 1949 exceeded that amount and we do not understand petitioner to seriously dispute the fact that she has received more than the above stated amount from Noell as follows: Partial proceeds of loan on Noell’s insurance-$10,064. 64 Checks and cash deposited in petitioner’s bank account- 17,579. 03 Cashier’s check_ 5,000.00 Gains on sale of stock bought with proceeds of insurance loan[1]- 907.94 Dividends paid petitioner on stocks bought with proceeds[1]- 442.25 Total_$33,993. 86 Petitioner contests the respondent’s determination on a number of grounds contending, inter alia, that respondent failed to make a sufficient effort to collect the tax from Noell. The most cursory perusal of the record reveals that this contention is wholly without merit. Respondent made every reasonable effort to effect collection of the admitted deficiency, assigning up to 10 men at a time to the search for Noell’s assets. Respondent’s limited success in collecting only $1,740.09 reflects not inaction by the respondent’s collection agents but, rather, the studied and devious maneuvers of Noell in nullifying their exhaustive efforts. Indeed, it seems plain that even before filing his return for 1949 on March 15, 1950, disclosing liability of $33,627.06, without any remittance (other than the $2,000 remittance paid with the declaration of estimated tax), Noell had embarked on a plan to hinder, delay, and defraud the Government in the collection of the tax admittedly owing. Surely he must have known on January 16, 1950, when he filed his delinquent declaration of estimated tax for 1949 that $2,000 was not even a sizable fraction of the correct figure. Noell elected to file a separate return despite having been informed by his accountant that it would cost him some $6,000 more than the tax computed on a joint return basis. As shown by our findings of fact, Noell repeatedly made unkept promises to pay, refused to disclose sources of potential income, refused to furnish requested financial statements, concealed cash, entered into fictitious banking arrangements in the name of his son, and made false statements to the collection agents regarding ownership and transfer of assets. All in all, we are convinced that up to the time of the trial Noell’s actions were consistently intended to hinder, delay, and defraud the collection agents and that the series of gratuitous transfers to petitioner was made in anticipation of execution by the collection agents. This being the case, transferee liability is established irrespective of the question of Noell’s solvency. William, Wiener, 12 T. C. 701; Ga Nun v. Palmer, 111 N. E. 223. Petitioner’s further contention that respondent failed to establish the insolvency of Noell therefore would be immaterial, even if ture, but, in any event, that argument must fail in light of our finding that Noell was insolvent. Although the burden of proof in transferee cases is on the respondent, the burden of going forward with the evidence is shifted to the petitioner upon proof of gratuitous transfers. William Wiener, supra; Godchaux Sugars, Inc. v. Quinn, (Mo. Sup.) 95 S. W. 2d 82, 83. Such transfers having been admittedly made in the instant case, a prima facie case of transferee liability was established and petitioner had the burden of showing Noell’s solvency. The only significant evidence of Noell’s solvency was his own testimony as to his income in the period 1950-Í953. We were not impressed with that testimony which was vague and inconclusive. In view of the thoroughness of respondent’s search for Noell’s assets, we think it clear that his assets did not approach the level of his liabilities. In view of the holding of the Court of Appeals for the Eighth Circuit in United States v. Hutcherson, 188 F. 2d 326, that property held by the entireties in the State of Missouri may not be levied upon to satisfy alien for Federal income tax due by only one of the spouses, we do not take into consideration Noell’s interest in the Fox Hill Farm property. Cf. William Wiener, supra. We have considered the medical testimony regarding Noell’s physical and mental condition and observed him on the stand. We are convinced that although his memory was impaired to some extent by his multiple afflictions, he was nevertheless capable of the intentions above attributed to him. Clearly, petitioner was initially liable as a transferee. We are of the opinion, however, that the assets retransferred to Noell by petitioner must be offset against the total originally transferred to her. Fada Gobins, 18 T. C. 1159. Cf. Johnston v. Jickling, 119 N. W. 746; Fulton v. McCullough, 7 N. W. 2d 910; Williamson v. Kinney, 125 P. 2d 920. We have found as a fact that petitioner effectively returned to Noell the $5,000 certified check, $4,700 from her checking account, and $9,234.37 in cash stemming from the sale of the aforementioned stocks, all of which total $18,934.37. By setting off that amount against the $33,993.86 transferred to petitioner, we arrive at the figure of $15,059.49 as the maximum amount for which petitioner might be held liable as a transferee.[1] As stated by us in Fada Gobins, supra, “The return of the property to him, to the extent of the property so returned, would, in logic at least, leave his creditors, including the United States, in the same position they were in prior to the transfer by him to petitioner.” It is petitioner’s further contention that except for the aforementioned assets returned to Noell, everything that she received from him was expended for living expenses which she asserts will reduce to zero whatever transferee liability may exist. We think this contention is wholly without merit. Our decision in Fada Gobins, supra, makes it clear that once funds are transferred in fraud of creditors, it is no defense to the transferee that part or all of those funds were subsequently expended for the living expenses of the transferor in the absence of a showing that the expenditures made had priority over the indebtedness to the Government. There being no such showing in the case at bar, our finding that the transfers from Noell to petitioner were intended to delay, hinder, and defeat the Government in the collection of Noell’s taxes is dispositive of the question. The record contains some general statements to the effect that some of the funds transferred were intended at the time of transfer for the payment of living expenses. Conceding without deciding that such an intention might preclude a finding that a particular transfer was in fraud of creditors, the evidence in the instant case is far too vague and indefinite to warrant a finding of süch intent as to any of the transfers. It follows that respondent correctly determined that the petitioner is liable as a transferee of the assets of Charles P. Noell. That liability must be reduced, however, to the extent of the assets retrans-ferred to Noell by petitioner. Decision will be entered under Bule 60. Moreover, the $6,685.57 already collected from petitioner would have to be offset against the $15,059.49 total, in determining the amount to be collected from petitioner.