ENGLES COIN SHOP, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JOHN R. ENGLE AND LINDA ENGLE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Engles Coin Shop, Inc. v. Commissioner
Docket Nos. 1121-78, 1122-78.
United States Tax Court
T.C. Memo 1983-561; 1983 Tax Ct. Memo LEXIS 232; 46 T.C.M. (CCH) 1367; T.C.M. (RIA) 83561; September 12, 1983. Elmer E. Lyon and Alan J. Dansker, for the petitioners. Elsie Hall, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in the petitioners' Federal income tax liability as follows: Engles Coin Shop, Inc.
Year
Deficiency
1973
$2,455,740.06
1975
9,602.10
John R. and Linda Engle
Year
Deficiency
1973
$8,263.45
1974
2,554,610.20
*233 The respondent has since conceded the bulk of these asserted deficiencies. The issues remaining for decision are: (1) whether petitioner-corporation failed to report sales to petitioner John Engle's proprietorship in the amount of $1,530 in the taxable year 1973; (2) whether petitioner-corporation failed to report sales for the period April 1, 1973, through April 17, 1973, in the amount of $41,550.34; and (3) whether petitioner-individuals overstated their cost of goods sold on John Engle's proprietorship by $28,147.35 in taxable year 1973. FINDINGS OF FACT Some of the facts of this case have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner Engles Coin Shop, Inc., (Coin Shop) is a corporation located in Indianapolis, Indiana, at the time its petition in this case was filed. Coin Shop filed corporate Federal income tax returns for the taxable years 1973 and 1975. Petitioners John R. and Linda Engle, husband and wife, resided in Indianapolis, Indiana, at the time their petition in this case was filed. They filed joint Federal income tax returns for the taxable years 1973 and 1974. Petitioner *234 Coin Shop was incorporated in the State of Indiana on December 23, 1972, and began operating in 1973. From January, 1973, to April, 1973, the Coin Shop's locations were Winchester, Indiana, and Dayton, Ohio. The Winchester, Indiana, store was closed on March 31, 1973, and was moved to its present location in Indianapolis, Indiana, on April 1, 1973. Petitioner John Engle operated a sole proprietorship in 1973 known as the Dayton Mall Coin Shop (Dayton Mall), in addition to the corporate operations. Petitioner Coin Shop was dormant during 1974 during which time petitioner John Engle operated as a sole proprietor. Petitioner Coin Shop was reactivated in 1975 with the Dayton store being split off into a separate corporation, Dayton Mall Coin Shop, Inc. During the years in question, the petitioners used the certified public accounting firm of Doyle Douglass in Dayton, Ohio, to do their bookkeeping and accounting, although Linda Engle made the entries for the Winchester store until April 1, 1973.Mrs. Engle had taken some courses in accounting. After the move to Indianapolis on April 1, 1973, the petitioners sent all accounting and bookkeeping information, with the exception of *235 the 1973 Dayton Mall records, daily to the Douglass firm which did all the posting for the books. The posting was done by or under the general supervision and direction of Linda Timmons, a Douglass employee. During 1973, 1974 and 1975 petitioners' books or accounts consisted of a sales and receipt journal, a check disbursement journal and a general ledger. A double-entry system and accrual basis of accounting was employed. The method of accounting used by petitioners clearly reflected income and was consistently employed. Petitioners' tax returns were prepared from the books and records kept by the Douglass firm after all the year-end entries and adjustments were made. After John Engle incorporated his business and operated for a while in 1973, he learned about the Indiana corporate gross income tax on intra-state sales. This tax was a gross receipts tax which was greater in some instances than the corporation's gross margin. In order to accommodate Indiana dealers, he operated the proprietorship, which we have previously described as Dayton Mall, out of the corporation's Dayton Mall store. Dayton Mall would make a sales invoice to the Indiana dealer and receive a check *236 in payment. Coin Shop would then make a sales invoice to Dayton Mall for the same amount and usually on the same date. In some instances the dealer's check was deposited to a checking account in Dayton, Ohio, and a check written on that account at the same time to Coin Shop. Other times the dealer's check to Dayton Mall was endorsed by petitioner John R. Engle (John) and deposited directly into the Coin Shop checking account. John continued to have concern over the corporation's potential Indiana tax problem and suspended Coin Shop's business operations as of January 1, 1974. John operated as a sole proprietorship for 1974. On January 1, 1975, John reactivated Coin Shop for his Indiana operations and incorporated the Dayton Mall store as Dayton Mall Coin Shop, Inc., on January 1, 1975. Both corporations operated during 1975. The Commissioner's notice of deficiency made three adjustments to petitioners' taxable income that are at issue. First, the Commissioner determined that Coin Shop had an unreported sale of $1,530 on June 18, 1973, to John Engle not entered on its books. This determination relates to the following events. John Engle's proprietorship, Dayton Mall, accepted *237 bags of war nickles as payment on a proprietorship invoice. To convert these nickels to cash, they were sent to Jules J. Karp. John received a check from Jules J. Karp dated June 15, 1973, in the amount of $1,530. It was endorsed and deposited to Coin Shop's checking account with American Fletcher National Bank. The 1973 Federal income tax return of Coin Shop failed to include the $1,530 from the Karp transaction in income. Second, the Commissioner determined that Coin Shop had unreported sales for the period April 1, 1973, through April 17, 1973, in the amount of $56,400.34 making the following explanation: Sales for the period April 1, 1973, through April 17, 1973, determined by means of the bank deposits method for that period and not entered on your books and records. During the period April 1, 1973, to April 17, 1973, Coin Shop had bank deposits of $56,400.34. Of this amount $26,959.65 was payment on sales occurring prior to April 1, 1973, and included in Coin Shop's sales at the time of sale under the accrual method. The balance of this amount was not included in Coin Shop's income for 1973. Third, the Commissioner disallowed certain of John Engle's Dayton Mall *238 cost of goods sold. John made no profit or mark-up on these transactions but thought that he should show a profit. He assumed a profit of $5,400 and from that figure added his cancelled checks and signed over invoices to arrive at gross receipts or sales. In adding up his checks, he made a mathematical error of $18,000. Petitioner John Engle summarized his Dayton Mall records and presented a summary of these transactions to his accountant at the end of the year, as follows: $821,381.45
Purchases by check #1001-1054
130,828.59
Purchases with cks. signed over to Supplier
$952,210.04
Sales Total Invoiced at $957,610.04 Profit $5,400.00 Doyle: Several cks. from a Dayton Mall customer made payable to Dayton Mall were signed over by Dayton Mall to its supplier (Me Engles' Inc). When John Engle was audited he could only produce endorsed checks or sign-over invoices totaling $120,681.20. The checks and invoices had been given to the IRS for an audit of another taxpayer's returns and he could no longer locate all of his documents. The Commissioner determined that he had overstated his cost of goods by $28,147.39. This consisted of the difference between *239 the $130,828.59 he claimed as checks that were signed over to Coin Shop and the $120,681.20 of these checks he was able to substantiate, or $10,147.39, plus his $18,000 error. The actual total amount of the checks that John signed over to Coin Shop was $160,784.75. John made no profit in his 1973 Dayton Mall sole proprietorship but rather transferred the sales through to Coin Shop. He only used Dayton Mall as a vehicle for Coin Shop to make intra-state sales and avoid the Indiana gross receipts tax. John did not overstate Dayton Mall's cost of goods sold in his Federal income tax return for 1973. OPINION Petitioners argue that the revenue agent misstated the facts in the notice of deficiency and that these errors, leading subsequently to enormous concessions by respondent, would not have been made had the revenue agent been sufficiently diligent because, according to petitioners, all the information necessary to correctly determine the facts was available to the agent. On this basis the petitioners maintain that the presumptive correctness of the notice of deficiency is vitiated so that the burden of proof should be no respondent. The mere presence of large concessions *240 by the respondent cannot undermine the presumptive correctness of the notice of deficiency. We explained in Gobins v. Commissioner,18 T.C. 1159 (1952), affd. 217 F.2d 952 (9th Cir. 1954): The concessions made by counsel were not only in the interest of orderly procedure, but they relieved petitioner of a substantial portion of her burden of proof and this court of what could have been an even longer and more burdensome trial. His action was in keeping with his duty as a lawyer and officer of the Court.To rule with petitioner, would be to say that counsel, whether for respondent or petitioner, who, by concession or stipulation of pertinent facts, relieves opposing counsel of a portion of his burden of proof and the Court of needless labor, does so at the jeopardy of having the burden of the opposing party as to remaining matters shift to himself. Justice and common sense would countenance no such rule. [18 T.C. at 1168-1169.] While we might be inclined to conclude from our examination of this record that the Commissioner's notice of deficiency was arbitrary and excessive as to the issue which was the source of the largest part of *241 the deficiency, see Hendrickson v. Commissioner,T.C. Memo. 1983-560, respondent has conceded this issue. Respondent has also conceded the two other issues wherein petitioners maintain that the Commissioner misrepresented the facts. The Commissioner's arbitrary actions will affect the presumptive correctness of the notice of deficiency only as to issues with respect to which the Commissioner's notice is arbitrary. Hendrickson v. Commissioner,supra at 11-12. We are not otherwise persuaded that the Commissioner's notice of deficiency was arbitrary. Petitioners further maintain that the Commissioner may not use an indirect method of determining income, here the bank deposit method, unless he has determined that petitioners' method of accounting and the books and records they maintained, do not clearly reflect income. Petitioners direct our attention to the fact that when the revenue agent audited their tax returns he determined that the method of accounting that they used clearly reflected income. Respondent, however, has not conceded that petitioners' books were properly kept. Indeed two of the issues remaining concern items of income that respondent *242 has shown petitioner Coin Shop received but which do not at first inspection appear to have been recorded on the Coin Shop books. The Supreme Court made it clear in Holland v. United States,348 U.S. 121 (1954), that respondent may use an indirect method of determining income in this circumstance. In Holland the taxpayer argued that the then section 41 of the Internal Revenue Code (precursor to the current section 446), expressly limited the authority of the Government to deviate from the taxpayer's method of accounting and, instead, confined the net worth method to situations where the taxpayer had no books or where his books were inadequate. The Supreme Court rejected this interpretation with the following explanation: The provision that the "net income shall be computed * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer", refers to methods such as the cash receipts or the accrual method, which allocate income and expenses between years. * * * The net worth technique, as used in this case, is not a method of accounting different from the one employed by defendants. It is not *243 a method of accounting at all, except insofar as it calls upon taxpayers to account for their unexplained income.Petitioners' accounting system was appropriate for their business purposes; and, admittedly, the Government did not detect any specific false entries therein. Nevertheless, if we believe the Government's evidence, as the jury did, we must conclude that the defendants' books were more consistent than truthful, and that many items of income had disappeared before they had even reached the recording stage. * * * To protect the revenue from those who do not "render true accounts," the Government must be free to use all legal evidence available to it in determining whether the story told by the taxpayer's books accurately reflects his financial history.[348 U.S. 121 at 131; footnote omitted.] We now turn to the merits. Coin Shop has failed to show that it included the $1,530 in income. It argues that this amount must have been lumped in with other amounts so that it cannot now be discovered. It further argues that the accounting procedures employed were sufficient to ensure the inclusion of the $1,530 in income. We remain unpersuaded, and we hold *244 that Coin Shop failed to report $1,530 in income in the taxable year 1973. The second issue concerns bank deposits made during the period April 1, 1973, through April 17, 1973. Petitioner Coin Shop argues that examination of these bank deposits is tantamount to putting it on a cash method of accounting.Coin Shop, an accrual method taxpayer, argues that the Commissioner cannot put it on the cash method under the circumstances of this case. Coin Shop further argues that the Commissioner cannot use the bank deposits method as to this short period of time, but rather must employ the method for the entire year, if at all. Petitioner Coin Shop's position betrays a misunderstanding of respondent's argument on this issue. Respondent, pointing to specific items that should be included in income, as evidenced by bank deposits, asserts that these items represent income unless Coin Shop can prove otherwise. While bank deposits are involved, this is the "specific item" method of determining petitioner's income. It does not violate petitioner's accrual method of accounting, for the "specific item" method, like the net worth method employed in Holland, is not a method of accounting.
*245 Examination of the evidence demonstrates that certain of the items involved were included in income. Of the $56,400.34 [1] that was originally contested, $26,959.65 was included in income. Our careful examination of the evidence reveals no support for petitioner's argument that more than the above amount was previously included in income when the specific sales giving rise to the income were made. Petitioners have failed in their burden of proof as to these items. The final issue concerns whether petitioner-individuals overstated their cost of goods sold on John Engle's proprietorship, Dayton Mall, in 1973. At trial petitioners presented evidence sufficient to demonstrate that John Engle did not overstate his 1973 Dayton Mall cost of goods sold. Respondent challenges this evidence on the grounds that it is incomplete; there should be an invoice for Dayton Mall, an invoice for Coin Shop and a check with respect to all Dayton Mall "sign overs," but some of these documents are missing. Petitioners assert that this documentation is incomplete because the checks and invoices were given to *246 the Internal Revenue Service for the audit of another taxpayer's returns. When these same documents were later requested for their own audit, petitioners could not find all of them. Respondent argues that petitioners are simply using the Internal Revenue Service's possession to excuse their own failure to keep adequate records. Respondent, however, had an opportunity to cross examine petitioner on this matter, after it was raised on direct testimony, but failed to do so. Neither did respondent offer any testimony in rebuttal or address the issue directly on brief, making only the previously mentioned aside. Under these circumstances and, given the otherwise credible evidence presented by petitioners, we find that petitioners have sustained their burden of proof on this issue. Indeed, petitioners have established, through documentary evidence and credible testimony, that the 1973 Dayton Mall transactions were "wash" transactions in which John Engle recognized no income. Finally, petitioners maintain that the present case represents a frivolous determination by the Commissioner for which petitioners should recover attorney fees and expenses of litigation. This Court was granted *247 authority to award attorney fees in cases instiuted after February 28, 1983, [2] but it has no such authority in cases instituted prior to that date; nor does it have the authority to award costs. McQuiston v. Commissioner,78 T.C. 807 (1982). Decisions will be entered under Rule 155.
Footnotes
1. Respondent conceded an item totaling $14,850, so that only $41,550.34 is at issue.↩
2. Sec. 7430, Internal Revenue Code of 1954↩, as amended.