CASH AND LINCOLN FENCE COMPANY, a California Corporation, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; EDGAR C. CASH and JOSEPHINE CASH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cash & Lincoln Fence Co. v. Commissioner
Docket Nos. 4388-80, 4389-80.
United States Tax Court
T.C. Memo 1982-331; 1982 Tax Ct. Memo LEXIS 415; 44 T.C.M. (CCH) 110; T.C.M. (RIA) 82331; June 15, 1982. Timothy R. Nibler, for the petitioners. Henry E. O'Neill, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined the following deficiencies and additions to tax against petitioners for the years indicated: Tax Year
Deficiency in
Addition to Tax, I.R.C. 1954
Petitioner
Ended
Income Tax
Sec. 6653(a)
Sec. 6653(b) [1]
Cash and Lincoln
3/31/76
$50,304.71
$25,152.36
Fence Co.
3/31/77
9,914.61
4,957.31
3/31/78
2,367.13
$118.36
Edgar C. Cash and
12/31/75
87,897.32
43,948.66
Josephine Cash
12/31/76
32,732.77
16,366.39
12/31/77
21,911.27
1,095.56
Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for our decision the *417 following: (1) whether the expenditure by Cash and Lincoln Fence Company of $40,000 in constructing a warehouse on property owned by Edgar C. Cash and Josephine Cash is a constructive dividend to Mr. and Mrs. Cash; (2) whether $10,000 of deposits to Mr. and Mrs. Cash's bank accounts represented income to them; (3) whether Mr. and Mrs. Cash are liable for an addition to tax under section 6653(a) for the calendar year 1977; (4) the amount the corporation is entitled to deduct as compensation to Mr. Cash; (5) whether the corporation is entitled to a $2,650 deduction for promotional and advertising expense; (6) whether the corporation is entitled to a $16,800 deduction for subcontract labor which respondent disallowed as being "payments to shareholders;" and (7) whether the corporation is entitled to a $5,000 deduction for equipment rental. [2]
*418 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Cash and Lincoln Fence Company is a corporation duly incorporated under the laws of the State of California. At the time Cash and Lincoln Fence Company filed its petition herein, it maintained its principal place of business in Colvis, California. For its taxable years ending March 31, 1976, March 31, 1977, and March 31, 1978, Cash and Lincoln Fence Company filed U.S. corporation income tax returns with the Internal Revenue Service Center, Fresno, California. Edgar C. Cash and Josephine Cash, husband and wife, who resided in Fresno, California, at the time their petition herein was filed, filed joint Federal income tax returns for the calendar years 1975, 1976, and 1977 with the Internal Revenue Service Center, Fresno, california. Cash and Lincoln Fence Company (the corporation) does business under the name Valley Fence Company. The corporation is in the business of furnishing and installing chain link fencing. Edgar C. Cash and Josephine Cash own 100 percent of the stock of the corporation. Edgar Cash for the years in issue was president of the corporation. Mr. Cash has held such position *419 with the corporation at least since April 1969. Mr. and Mrs. Cash own an approximately 3-3/4 acre tract of commercial real estate on East Herndon Avenue in Clovis, California. This tract is divided into two portions: (1) a 3-acre portion bearing the address 4565 East Herndon Avenue and (2) the remaining 3/4-acre portion on the northeast corner of the tract bearing the address 4575 East Horndon Avenue. On September 1, 1973, Mr. and Mrs. Cash and the corporation entered into a lease whereby the corporation leased the property at 4565 East Herndon Avenue to use in its business for a period of 10 years commencing on September 1, 1973, and ending on August 31, 1983. The lease provided that the corporation was to pay Mr. and Mrs. Cash $750 per month in rent for the period from September 1, 1973, through August 31, 1976, with such rent being increased to $1,000 per month for the period from September 1, 1976, through August 31, 1979, and further increased to $1,250 per month for the period from September 1, 1979, through August 31, 1983. The lease specifically excluded the 3/4-acre portion of the tract located at 4575 East Herndon Avenue; however, the corporation did store materials *420 on that portion of the property and was not charged any additional rent for such use of the 3/4-acre portion. The minutes of a meeting of the board of directors of the corporation on May 8, 1974, reflect the following: The President stated that this meeting had been called for the purpose of discussing the expansion of * * * [the corporation]. At this time a motion was made by Presidient Edgar Cash, that * * * [the corporation] will build an approximate 4000 square foot building on the adjacent property to present location for the purpose of expansion and manufacturing of Chain Link Fabric. Lease to be adjusted at the time * * * [the corporation] commences with manufacturing in the proposed new building. The motion was seconded by Josephine Cash and carried unanimously. The corporation expended $40,000 in constructing a building at 4575 East Herndon Avenue. Construction began during the latter part of 1974 and the building was completed in early 1975. The contractor who built the warehouse billed the corporation a total of $30,000 for constructing the warehouse. The corporation issued three checks on the following dates and in the following amounts to the contractor, *421 most of such amounts being in payment for the $30,000 owed for the building of the warehouse: Date
Amount
2- 8-75
$17,185
2-26-75
12,185
3-10-75
7,185
Additionally, the corporation expended at least another $10,000, which consisted, in part, of $7,242 for grading and paving work and $2,852 for fencing. The invoice billing the corporation for the grading and paving work was dated May 27, 1975. The warehouse was never occupied or utilized by the corporation. It was determined during or immediately after the construction of the building that it would be uneconomical for the corporation to enter into manufacturing chain link fencing because of the increased foreign competition in the marketplace. Mr. and Mrs. Cash leased the building to two other tenants. A depreciation schedule attached to Mr. and Mrs. Cash's joint individual income tax return for 1975 shows the warehouse as acquired by them in February 1975 at a cost or other basis for the property of $40,000. Mr. and Mrs. Cash claimed a $2,000 allowance for depreciation for the warehouse for the year 1975, computed under the straight line method of depreciation with a 20-year useful life assigned to *422 the warehouse. On their tax returns for 1976 and 1977, Mr. and Mrs. Cash similarly claimed a yearly allowance for depreciation for the warehouse in the amount of $2,000. Mr. and Mrs. Cash received rental income from the land and buildings located at both 4565 and 4575 East Herndon Avenue for the years 1975, 1976, and 1977. They reported the rental income attributable to these properties on their individual income tax returns as follows: Year
Rental Income
1975
$11,800
1976
14,000
1977
20,400
Mr. Cash maintains a loan account with the corporation. At various times during a year, Mr. Cash would draw funds from the corporation for his personal use and any funds drawn in excess of his salary would be charged to his loan account. However, the amount Mr. Cash owed to the corporation as shown on this account would periodically be reduced by amounts by which the corporation became indebted to him. The amounts which the corporation paid to Mr. Cash by offsetting and reducing the amounts he owed the corporation on the loan account were often not reported as income on Mr. and Mrs. Cash's individual tax returns. The revenue agent who examined the returns of the *423 corporation and the returns of Mr. and Mrs. Cash determined that Mr. and Mrs. Cash had $10,000 of unexplained deposits to their bank accounts. At a meeting of the board of directors of the corporation on May 23, 1969, the following resolution concerning the compensation to be paid to Mr. Cash was adopted: BE IT RESOLVED: That commencing with the fiscal year of this Corporation, beginning April 1, 1969 and ending March 31, 1970, this Corporation shall pay to Edgar C. Cash the sum of $24,000.00 per year, plus 40% of the remaining profits of the Corporation before taxes for services rendered to the Corporation; said compensation to continue until further action of the Board of Directors. The corporation used the cash method of reporting its income and deductions. For the period from April 1, 1969, to March 31, 1978, the corporation on its returns reported the following amounts paid as compensation to Mr. Cash: Taxable Year Ending
Amount
3/31/70
$39,937.40
3/31/71
6,000.00
3/31/72
28,000.00
3/31/73
23,065.00
3/31/74
45,520.00
3/31/75
25,500.00
3/31/76
40,000.00
3/31/77
48,000.00
3/31/78
80,000.00
For this same period, the following amounts *424 were payable for each year as a bonus to Mr. Cash under the arrangement adopted in the 1969 resolution: Fiscal Year
Taxable Income
Net Profits *
Ending
Reported
Before Taxes
Bonus
3/31/70
$15,188.41 $31,125.81
$12,450.32
3/31/71
7,965.00 3/31/72
5,890.42 9,890.42
3,956.17
3/31/73
982.77 47.77
19.11
3/31/74
10,322.11 31,842.11
12,736.84
3/31/75
23,658.01 25,158.01
10,063.20
3/31/76
34,888.10 50,888.10
20,355.24
3/31/77
49,071.59 73,071.59
29,228.64
3/31/78
(16,804.05)
39,195.95
15,678.38
On its return for the taxable year ending March 31, 1977, the corporation claimed a $17,120.77 deduction for advertising and promotion expense. This amount included two checks drawn on the corporation's checking account by Mr. Cash. *425 One check was drawn on May 6, 1976, and the other was drawn on August 25, 1976; the checks are in the respective amounts of $1,450 and $1,200. On each check the space for designating the payee was left blank. On the back of each check is a bank stamp indicating that the check was for deposit only to the account of the Clovis 500 Club, 500 Clovis Avenue, Clovis, California. Mr. Cash in June of 1973 purchased for $8,950 a drilling rig which could be used for drilling the post holes required in installing chain link fencing. Mr. Cash leased the drilling rig to the corporation. The corporation used the rig in its business and on a few occasions subleased the rig to third parties. A journal entry made on the corporate books states that $9,000 in rental was owed by the corporation to Mr. Cash for the use of the rig for the fiscal year ending March 31, 1976. On its return for the taxable year ending March 31, 1976, the corporation claimed $17,077.81 as a deduction for "rental of equipment." During the fiscal year ending March 31, 1976, the Cash and Lincoln Fence Company disbursed the following amounts by check to Mr. and Mrs. Cash: Check No.
Date
Amount
1842
8/25/75
$6,800
2029
10/28/75
5,000
2193
1/ 1/76
5,000
*426 These amounts were deducted on the corporation's return for the year as "sub-contract labor." Check no. 1842 bore the notation "equipment rent." On their individual income tax returns for the taxable years 1975, 1976, and 1977, Mr. and Mrs. Cash reported, respectively, $9,000, $5,975, [3] and $9,000 in gross receipts from the use of the drilling rig. In the statutory notice of deficiency to the corporation the following explanation is given of the items still in issue: EXPLANATION OF ADJUSTMENTS
(a) It is determined that your cost of goods sold should be reduced * * * for the year ended March 31, 1976 * * * and your taxable income correspondingly increased * * * [by] payments * * * for the benefit of the shareholders * * * not * * * ordinary and necessary business expenses. * * * Year Ended
Depreciation
March 31, 1976
Payments to shareholders
$16,800.00
*427 (b) Your business expenses have been reduced and your taxable income increased as follows: Year Ended
March 31, 1976
March 31, 1977
Equipment rental
$5,000.00
Advertising and promotion
$2,650.00
It has not been established that these amounts were expended for ordinary and necessary business expenses under code section 162 of the Internal Revenue Code. (d) "It is determined that your compensation of officers' deduction should be $81,693.98 instead of $123,298.00 for the year ended March 31, 1978. It has not been established that $41,604.02 of the claimed bonus compensation paid to Mr. E. C. Cash is deductible for that taxable year." Respondent in his notice of deficiency to Mr. and Mrs. Cash gave the following explanation of the deficiencies determined: (a) It is determined that you had dividend income * * * for 1975 * * * from Cash and Lincoln Fence Company which is not reported on your income tax return. These dividends result from Cash and Lincoln Fence Company paying for personal items on your behalf as follows: Description
1975
Cost of Herndon Warehouse
$40,000.00
Cash drawing
11,800.00
$9,508.00
*428 (f) It is determined by bank deposit analysis that you have deposits totaling $10,000.00 which were not adequately explained. Therefore, your taxable income is increased $10,000.00. OPINION The first issue for decision is whether Mr. and Mrs. Cash had $40,000 of dividend income as a result of the corporation's construction of a warehouse on property owned by them. It is petitioners' position that the corporation's construction of the warehouse cannot constitute income to them. According to petitioners, it was clearly understood that the existing lease under which the corporation used 3 acres of their property would be adjusted to include the other 3/4 acre of the tract located at 4575 East Herndon Avenue on which the warehouse was being constructed. Respondent's position, on the other hand, is that since there was no existing lease under which the corporation would use the warehouse, the corporation's expenditure of $40,000 to construct a warehouse upon property owned by Mr. and Mrs. Cash represented the distribution of a dividend to them. In M.E. Blatt Co. v. United States,305 U.S. 267 (1938), it was held that where there is an existing lease to *429 use property and the lessee makes improvements to such property, the lessor does not realize any income in the year in which the improvements are made, so long as the improvements are not intended as rent. The Supreme Court reasoned that while it might be assumed that the lessor became the owner of the improvements at the time when they were made, under the circumstances he had no right to use or dispose of such improvements during the term of the lease. The corporate minutes, which we quoted in our findings of fact, disclose some intention that the corporation be allowed to use the warehouse upon its completion to manufacture chain link fencing. However, no lease or specific agreement concerning such lease was reached at the time the meeting took place. At most, there was only a tentative understanding that such an agreement or lease would be entered into upon completion of the warehouse. The record fails to indicate that there was any understanding reached concerning the length of the term during which the corporation would be allowed to use the warehouse premises or the amount of additional rent, if any, which the corporation would be charged for the use of such premises. *430 The evidence offered at trial concerning the actual terms under which the corporation would be allowed to use the property was vague, unspecific and, at times, even contradictory to the version of the facts petitioner later put forward on brief. At trial, Mr. Cash stated that no additional rent would be charged the corporation for use of the constructed warehouse. Yet, on brief, counsel for petitioners maintained that the rent paid by the corporation would appropriately be adjusted for use of the warehouse, as might be implied from what was stated in the corporate resolution. Clearly, if Mr. and Mrs. Cash would receive rent from the use of the warehouse by the corporation upon its completion, they would have a presently exercisable right to the improvements. Therefore, they would have realized income as a result of the making of the improvements. Under such circumstances, the situation would be totally distinguishable from that in M.E. Blatt Co. v. United States,supra, since the owner would have exercised his right to use the improvements by way of charging the lessee rent therefor. In Commissioner v. Cunningham,258 F.2d 231 (9th Cir. 1958), *431 affg. 28 T.C. 670 (1957), a specific and definite agreement for lease of certain real property had been concluded between a taxpayer-shareholder and his corporation. Prior to the time the corporation made improvements to the property, it had been specifically agreed that the corporation would lease such property for a term of 6 years and that no rent would be payable. The corporation further did use the property for such term and amortized the cost of the construction over a 6-year term of the lease both on its books and on its tax returns. Accordingly, based on the authority of M.E. Blatt Co. v. United States,supra, and the provisions of section 109, it was held that the taxpayer-shareholder did not have income either in the year the improvements were completed or in the year in which he took possession of such improvements when the lease expired. The record in the instant case, however, shows that the corporation never did use the warehouse and that the Cashes as early as February of 1975 took possession of the property and leased the warehouse *432 to third parties. Further, Mr. and Mrs. Cash on their own individual return for 1975 claimed a depreciation deduction for the warehouse based on their cost or other basis in the building being $40,000. Transactions between a shareholder and his closely held corporation are subject to special scrutiny. The facts present do not support a finding that there was an existing arm's length agreement concerning the corporation's future use of the warehouse property. Based on this record, we find that the $40,000 expended by the corporation in constructing the warehouse was a section 301 distribution to Mr. and Mrs. Cash. [4] Since there were apparently sufficient earnings and profits to cover this distribution, the $40,000 amount distributed is dividend income to Mr. and Mrs. Cash. Section 301(c)(1) and section 316. [5]
The next issue for decision concerns $10,000 of unexplained deposits to bank accounts maintained by Mr. and Mrs. *433 Cash. In Jones v. Commissioner,29 T.C. 601, 618-620 (1957), we stated that the existence of bank deposits alone, though not explained or accounted for in a satisfactory manner, does not show that sums deposited were income. However, it was stated that, where the Commissioner in his notice of deficiency has determined that they were income, the taxpayer bears the burden of proof to show to the contrary. Similarly, in Hague Estate v. Commissioner,132 F.2d 775 (2d Cir. 1943), affg. a Memorandum Opinion of this Court, it was stated that it was not uncommon to use bank accounts as evidence of the receipt of income and that while such evidence is not conclusive, deposits in checking accounts are so often made up of income that where such is the fair inference to be drawn from the facts, it is proper to make such a conclusion. In several other cases we have also held that respondent may use the bank deposits method in relation to only a few deposits and that the burden of proof is on petitioner to show that such deposits were not income. Hollman v. Commissioner,38 T.C. 251, 261 (1962); O'Dwyer v. Commissioner,28 T.C. 698, 705 (1957), *434 affd. 266 F.2d 575 (4th Cir. 1959). Petitioners here have failed to offer any reasonable explanation of the source of the $10,000 of deposits to their bank accounts. Accordingly, we sustain respondent's determination that such $10,000 represented income to Mr. and Mrs. Cash. The next issue for decision is whether Mr. and Mrs. Cash are liable for an addition to tax for negligence or intentional disregard of rules and regulations under section 6653(a). The burden is on petitioners to show that such an addition to tax is improper. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972); Rule 142(a), Tax Court Rules of Practice and Procedure. Additionally, the record shows that Mr. and Mrs. Cash failed to report all of the compensation paid to them by the corporation in 1977. Mr. and Mrs. Cash on their individual return for 1977 reported as salary income only those amounts stated on the W-2 Forms attached to the return; that is, $30,000 of compensation paid to Mr. Cash and $7,800 of compensation paid to Mrs. Cash. The corporation on its return for the taxable *435 year ending March 31, 1977, however, reported and deducted $48,000 as being paid to Mr. Cash and $8,563 as being paid to Mrs. Cash. Mr. and Mrs. Cash have stipulated that an increase of $18,763 in their salary income should, therefore, be made for the year 1977. This gap between the compensation actually paid and the compensation reported by petitioners is strong evidence of negligence or intentional disregard of rules and regulations. Accordingly, we sustain respondent's determination of an addition to tax under section 6653(a). The next issue for decision is the proper amount of the bonus which the corporation is entitled to deduct as compensation to Mr. Cash for its taxable year ending March 31, 1978. Respondent in his statutory notice computed the allowable bonus to be in the amount of $8,395.98. Such amount when added to the $30,000 of salary [6] allowed by respondent resulted in a disallowance of the remaining balance of $41,604.02. An employer is entitled to a deduction for the bonus paid to an employee when such amount is paid in good faith and as additional compensation for services actually rendered, so long as the bonus when added to the employee's set salary is *436 reasonable compensation. Section 1.162-9, Income Tax Regs. Respondent does not argue that the base salary paid Mr. Cash represents unreasonable compensation, nor does he take issue with the bonus formula adopted by the corporation for computing the bonus to be paid to Mr. Cash. Respondent concedes that to the extent paid, the amount arrived at under the formula is deductible by the corporation as compensation. The record shows that the corporation did not always make payment of the full amount of salary and bonus earned by Mr. Cash in the year in which such amounts of salary and bonus were accrued. The result is that part of the $80,000 of the total compensation reported as being paid to Mr. Cash represents a payment of a bonus earned for a prior year. We have computed the amount *437 of the compensation deductible by the corporation for the year in issue to be as follows: Total Compensation
Fiscal Year
Reported as Paid
Salary
Ending
to E. C. Cash
Accrued
Paid
Balance Owed
3/31/70
$39,937.40
$24,000
$24,000
3/31/71
6,000.00
24,000
6,000
$18,000
3/31/72
28,000.00
42,000
28,000
14,000
3/31/73
23,065.00
38,000
23,065
14,935
3/31/74
45,520.00
38,935
38,935
3/31/75
25,500.00
24,000
24,000
3/31/76
40,000.00
24,000
24,000
3/31/77
48,000.00
24,000
24,000
3/31/78
80,000.00
24,000
24,000
Fiscal Year
Bonus
Ending
Accrued *
Paid
Balance Owed
3/31/70
$12,450.32 ** $15,937.40
3/31/71
3/31/72
3,956.17
$3,956.17 3/31/73
3,975.28
3,975.28 3/31/74
16,712.12
6,585.00
10,127.12 3/31/75
20,190.32
1,500.00
18,690.32 3/31/76
39,045.56
16,000.00
23,045.56 3/31/77
52,274.20
24,000.00
28,274.20 3/31/78
43,952.58
56,000.00
(12,047.42)
*438 We find that the corporation is entitled to deduct as compensation $24,000 of base salary to Mr. Cash and $43,952.58 as bonus payments for its fiscal year 1978. The next issue is whether the corporation is entitled to a $2,650 deduction for promotional and advertising expense. The corporation paid $2,650 to Mr. Cash. At the trial, Mr. Cash testified that the two checks composing this amount represented reimbursement of the travel expenses for two trips which he and his wife had taken. According to his testimony, the $1,450 check was reimbursement for a trip which he and his wife took to Seattle, Washington, to attend a class sponsored by the International Fencing Industry Association on installation procedures for chain link fencing. Mr. Cash testified that the second check for $1,200 represented reimbursement for a trip which he and Mrs. Cash took to Sparks, Nevada, to attend a three-day convention of the California chapter of the International Fencing Association. Other than for the two checks themselves and the testimony of Mr. Cash, there is no evidence in the record that the checks were for traveling or promotional and advertising expenses. Section 162 allows the deduction *439 for travel expenses. Specifically, that section provides as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business * * *. However, before any deduction for travel expense can be allowed, the substantiation requirements of section 274 must be met. Section 274 provides in pertinent part as follows: SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (d) Substantiation Required.--No deduction shall be allowed-- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), unless the taxpayer substantiates by adequate records or by sufficient evidence *440 corroborating his own statement (A) the amount of such expense * * * (B) the time and place of the travel * * * (C) the business purpose of the expense * * *. Petitioner clearly has not submitted adequate records or any other sufficient evidence corroborating the testimony of Mr. Cash to substantiate the elements required under section 274(d). Mr. Cash testified only that the entire $2,650 was in reimbursement for the actual expenses he had incurred on the two trips. However, no receipts, bills, or accounts were introduced into evidence showing the amounts expended on these two trips for air fare, lodgings, or meals. See generally section 1.274-5(c)(1) through -5(c)(3), Income Tax Regs. Accordingly, we sustain respondent's determination that the corporation is not entitled to a $2,650 deduction for promotional and advertising expense. The last two issues for decision pertain to a $16,800 deduction for subcontract labor and a $5,000 deduction for equipment rental claimed by the corporation on its tax return for its fiscal year 1976. Petitioner's contention is that both of these amounts were paid to Mr. Cash by the corporation as rental for the use of the drilling rig. The *441 corporation claimed a deduction on its return for this taxable year of $9,000. It is petitioner's contention, however, that it is entitled to further deductions for rental payments on the drilling rig. Mr. Cash at trial testified that the rig was rented to the corporation for a rental of $25 for each hour the rig was used. He testified that, based on the number of hours spent in installing a fence, he could determine the number of hours which the rig had been used on the job. Mr. Cash, on cross examination, specifically denied that the rig was leased to the corporation at a flat rate of $750 per month. However, Mr. Cash stated that he had not brought the records from which it would be possible for him to estimate the number of hours during which the rig was used by the corporation in the taxable year in issue. We conclude that the corporation is not entitled to deduct any amounts, other than the $9,000 already allowed to it by respondent, as rental payments for the drilling rig in its fiscal year 1976. Although Mr. Cash testified that he had records from which it would be possible to estimate the number of hours during which the rig was used, no such records were produced *442 or introduced into evidence at trial. Further, even accepting this testimony that the rental arrangement was for $25 for each hour of use, it is highly improbable that the rig would have been used a sufficient number of hours to entitle Mr. Cash to $30,800 in rent in one year. For him to have earned this amount of rental, the rig, we calculate, would have to have been used an average of 23.7 hours for each week in the year. Moreover, it seems unlikely that the corporation would have paid such a large amount in rental for a piece of equipment which Mr. Cash had purchased for $8,950 in June of 1973. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
2. By stipulation respondent conceded that Cah and Lincoln Fence Company was not liable for the addition to tax for fraud under section 6653(b) for its fiscal years ended March 31, 1976 and 1977, and the corporation conceded it was liable for the addition to tax for negligence for these years. Respondent also conceded that the corporation was not liable for the addition to tax for negligence under section 6653(a) for its fiscal year ended March 31, 1978. Respondent conceded that Mr. and Mrs. Cash were not liable for the addition to tax for fraud under section 6653(b) for the calendar years 1975 and 1976, and Mr. and Mrs. Cash conceded that they were liable for the addition to tax for negligence under section 6653(a) for these years. Among the many other items disposed of by agreement of the parties was the proper amount of depreciation allowable on the warehouse, with the understanding that if we conclude the warehouse was contributed by the corporation to Mr. and Mrs. Cash, the depreciation is deductible by them and, if not, it is deductible by the corporation.↩
*. Derived from taxable income reported for the year by adding back all of the compensation reported as paid to Mr. Cash in such year in excess of the $24,000 of base salary for such year. To the extent the corporation was making payment of amounts owed to Mr. Cash as compensation for prior years, this should not reduce the amount of the bonus that would be computed for a present year.↩
3. Respondent in his statutory notice asserted that Mr. and Mrs. Cash had further amounts of income for 1975 and 1976 from the drilling rig in the respective amounts of $5,000 and $3,025 since the corporation in 1975 and 1976 had deducted, respectively, $14,000 and $9,000 in rental payments to them. Petitioners subsequently agreed to these adjustments.↩
4. See Jaeger Motor Car Co. v. Commissioner,T.C. Memo. 1958-223↩. 5. Under the stipulation of the parties, Mr. and Mrs. Cash are entitled to a depreciation deduction with respect to the warehouse in each of the years here in issue.↩
6. Respondent apparently assumed that, since Mr. Cash reported $30,000 of wages, salaries, tips, and other compensation on his individual returns for 1975, 1976, and 1977, his base salary had been increased from $24,000 to $30,000. However, the record does not show that such a change had been made in the compensation arrangement the corporation had adopted for Mr. Cash.↩
*. Amounts accrued beginning with the fiscal year ending 3/31/70. These amounts consist of the balance owed from previous year plus bonus due for current year. ** The corporation apparently had another salary and bonus arrangement in effect for prior years so part of the amount paid, we assume, is for accrued unpaid amounts under such prior arrangement.↩