[Civ. No. 4532. Third Appellate District.—March 30, 1932.]

CHAS. W. WITHROW, Appellant, v. NATIONAL SURETY COMPANY (a Corporation) et al., Respondents.

L. E. Dadmun for Appellant.

Whitson & Sims, Everett W. Mattoon and S. V. O. Prichard for Respondents.

COMSTOCK, J., *pro tem.*—Action to quiet title to real estate and to enjoin defendants from selling the same under execution.

The evidence is without conflict, practically all of the facts having been stipulated to at the trial. The material facts are as follows: Plaintiff was the owner of a lot of land in Los Angeles, improved with a small frame house and garage, upon which he resided. In April, 1926, a collision occurred between the automobile of plaintiff and one Constance Beggs. Suit for damages for personal injuries was threatened against plaintiff. He denied liability, but, nevertheless, upon advice of friends, conveyed his said real estate to his sister, Anna F. Hockensmith, without consideration other than the verbal agreement between him and his sister that she should hold title to the lot temporarily on account of said threatened lawsuit and pending a settlement thereof. The conveyance was by quitclaim deed absolute in form, without condition or reservation of title or interest in plaintiff contained therein. While the title stood in the name of Anna F. Hockensmith, she and her husband were sued by National Surety Company and an attachment was levied in said action upon the said real property. Subsequently to the levy of said attachment and while the same was in force Anna F. Hockensmith reconveyed the property to the plaintiff by quitclaim deed. Prior to such reconveyance plaintiff had made a complete settlement of the Beggs claim for the sum of $225 and obtained a release. After the deed back to plaintiff, judgment was recovered by National Surety Company in its action against the Hockensmiths and execution thereon was issued, under which the defendant sheriff proceeded to sell the property. Plaintiff seeks the interposition of equity to prevent such sale and to quiet his title.

The trial court gave judgment that plaintiff be denied a decree quieting title in his favor; that defendant National Surety Company recover its costs against plaintiff; that National Surety Company be expressly authorized and permitted to sell the property under said execution, and that any injunction theretofore issued in the action restraining said sale be dissolved. Plaintiff moved for a new trial and to vacate the judgment and for a different judgment

upon the findings. These motions were denied. This appeal is taken from the judgment and from the order denying said motions.

Plaintiff seeks to set in motion the machinery of a court of equity to relieve him from a condition brought about by his voluntary act. He who seeks the aid of a court of conscience must present himself in a blameless attitude or be denied relief. It is a fundamental principle of equity jurisprudence that whenever a party who, as actor, seeks to set judicial machinery in motion and obtain some remedy has violated conscience or good faith, or other equitable principle, in his prior conduct, then the doors of the court shall be shut against him *in limine*. (1 Pomeroy's Equity Jurisprudence, sec. 397.) This doctrine does not rest upon any comparison of equities between parties, but squarely upon the foundation that in order to qualify himself to be heard at all in a court of equity one must speak consistently with the very principles which have occasioned its existence. Even though it would be manifestly unfair for a person to whom a conveyance conceived in fraud was executed without consideration to keep the property as against the fraudulent grantor, still equity is so jealous of its principles that it turns away at its very threshold those who have been party to a wrong. (*Allstead* v. *Laumeister*, 16 Cal. App. 59 [116 Pac. 296].) It is obvious that if these principles apply to the state of facts presented by the record here, appellant cannot have relief.

Appellant contends that there was no intent to defraud creditors shown or which could properly be inferred from his acts in conveying his land under the circumstances. His position is that he put his property out of his name and thus gave himself the appearance of being penniless for the purpose of enabling him to make a *just* settlement with the person claiming damages from him; that it was done because his friends advised him he would be "held up" if the injured person knew he had any real property, and that the transfer was consistent with a prudential regard for his own interest as well as the utmost good faith toward Constance Beggs. We are of the opinion that this position cannot be maintained. There is nothing in the record which shows that the Beggs claim was in any way unconscionable or extortionate or that any effort was being made to "hold

up'' the appellant. It seems to us a one-sided view of justice which assumes that a *just* settlement cannot be made by one who owns property. The law gives to one who has been injured in his person or property as a proximate result of the negligence of another, and without negligence upon his own part, contributing to his injuries, the right to recover such damages as will fairly and fully compensate him for all pecuniary loss suffered thereby. Such compensation presupposes the ability upon the part of the negligent party to make pecuniary amends for the wrong done and the damage inflicted. If there is no financial ability to .rectify the wrong, then justice has been cheated. On the other hand, for one free from negligence the law affords adequate defenses. We perceive no measure of justice or good conscience in an act which puts one in a position to negotiate for settlement of a claim based upon rights guaranteed under the law by *falsely* saying to the claimant: ''Though you assert my liability and I deny it, still it will do you no good to sue me, for if, perchance, you recover a judgment against me I have no property and shall be unable to satisfy it.'' Nor can we recognize that such a course would be consistent with a prudential regard for one's own interest and the utmost good faith towards the claimant. Rather it should be described as a selfish and unfair regard for one's own interest and an unconscientious disregard of the lawful rights of others, conceived in fraud and based upon falsity.

The principles discussed herein have been applied to deny one relief in equity against his own conveyance in fraud of creditors. (*Allstead* v. *Laumeister,* *supra,* note, 7 A. L. R. 150.) Constance Beggs was a creditor of plaintiff. ██ A creditor within the meaning of our law relating to fraudulent conveyances is one in whose favor an obligation exists by reason of which he is or may become entitled to the payment of money. (Civ. Code, sec. 3430.) One having a claim arising from tort is a creditor, as well before the commencement of an action as after. (*Chalmers* v. *Sheehy,* 132 Cal. 459 [84 Am. St. Rep. 62, 64 Pac. 709]; *Cioli* v. *Kenourgios,* 59 Cal. App. 690 [211 Pac. 838].) In *Holliday* v. *Holliday,* 10 Iowa, 200, the contention was made that a conveyance was executed to a party other than the true owner because he feared he would be prosecuted upon a demand

which he deemed unjust. Relief in equity was denied the complainant because equity will neither enforce a reconveyance nor enforce a secret trust in favor of a fraudulent grantor.

■ Since we take the view that plaintiff's conveyance was conceived in fraud, it is plain that no enforceable trust arose. In *Alaniz* v. *Casenave,* 91 Cal. 41, 47 [27 Pac. 521, 523], it was said that "Courts will not allow a trust to be proven by a party to the fraud, if the trust was created for a fraudulent purpose."

■ A conveyance in fraud of creditors vests title to the property transferred in the grantee, except as against the creditors of the grantor. While the grantee holds such title the property is subject to the claims of his creditors to the same extent as any other property to which he has title. Neither the fraudulent grantor nor grantee can set up the fraudulent character of the conveyance as against the creditors of the grantee. This proposition is plainly stated in 27 C. J. 665, where many cases are cited which amply support the text.

Appellant relies strongly upon the case of *Chamberlain* v. *Chamberlain,* 7 Cal. App. 634 [95 Pac. 659], in support of his claim that his act was consistent with a prudential regard for his own interest and with the utmost good faith toward Constance Beggs. But a cursory examination of that case discloses that the grantee had defrauded the grantor into making the conveyance by intentionally frightening him into the idea that if he did not do so creditors of an indebted corporation in which he held stock would pursue their remedy upon his stockholder's liability against his property. In support of the judgment of the court below it was presumed that the plaintiff's act was free from fraud. This view was taken especially because of the importunities of the grantee and because no creditor appeared to have been actually defrauded. Further, it was held that even conceding that the conveyance was influenced somewhat by the grantor's desire to preserve his property from sequestration by the creditors of the corporation, still equity would not permit the grantee to lay a trap for him and thereafter retain the fruits of his perfidy upon the ground that the grantor yielded too readily to temptation to save himself at a possible expense of creditors, and that the greater offense of

the tempter overshadowed and rendered innocuous the weakness of the one of whom advantage was taken. The doctrine thus expounded was but an application of an exception to the general rule that equity will not grant relief to one who has made a deed to defraud creditors, such as was made in *Donnelly* v. *Rees*, 141 Cal. 56 [74 Pac. 433]. In the case at bar there was no fraud on the part of the grantee which induced plaintiff to make the deed. The scheme was his, founded upon the mere advice of friends, not upon fraud or undue influence by another, sufficient to overcome his volition. We think the general rule and not the exception applies here.

That the lien of the judgment did not attach until after the property was reconveyed to plaintiff is of no avail to him. The lien of an attachment is merged in that of a judgment and confers a priority in the lien of the judgment. (*Brun* v. *Evans*, 197 Cal. 439 [241 Pac. 86]; 3 Cal. Jur. 487.)

The points which we have discussed are decisive of the case and render detailed attention to other propositions mentioned in the briefs unnecessary.

The judgment is affirmed.

Preston, P. J., and Thompson (R. L.), J., concurred.