[Civ. No. 8325.   Third Dist.   Mar. 29, 1954.]

J. H. WAGNER, Appellant, v. FLORENCE A. TROUT, Respondent.

Richard J. Lawrence for Appellant.

Gordon J. Aulik for Respondent.

VAN DYKE, P. J.—By this action appellant Wagner sought to recover the possession of an automobile from respondent Trout. The pleadings were in the usual form and both appellant Wagner, as plaintiff below, and respondent Trout, as defendant below, asked that title to the vehicle in question be quieted. The trial court gave judgment in favor of respondent Trout and Wagner appeals.

The following facts appear in the testimony of respondent. Prior to the time that Wagner's claim of title originated respondent was living with one Raymond Trout. The couple were not husband and wife. She purchased the automobile with her own funds and directed the dealer who sold her the car to register the title in her name alone. For some unexplained reason, the car was registered in the name of respondent or Raymond Trout, thus making it possible under California law for either respondent or Raymond to transfer the car. When respondent discovered this situation, and that the pink slip was in the possession of Raymond, she compelled him to give her a document which stated that Raymond was thereby relinquishing all interest in the car to her. However, he retained the pink slip. Later on Raymond wanted to borrow on the car and she permitted him to do this. The two signed a promissory note for $200, which money was then borrowed from the Bank of America and the car was so registered as to show legal title in the bank and registered ownership in respondent or Raymond. This loan was paid off and Raymond again got possession of the pink slip. The couple went to Reno, Nevada, and while there Raymond left the respondent, taking the car with him. It took her some time to ascertain his whereabouts. She located him in Las Vegas.

Appellant, who is a used car dealer in Las Vegas, testified that Raymond transferred the car to him as part payment for another used car which he had for sale and that this transfer was agreed upon on the evening of the 14th of September, 1950. He testified that the car then had Nevada license plates and that Raymond presented to him a Nevada green slip, a document tantamount to the California pink slip, which green slip showed the car to be registered to Raymond alone as owner. Raymond, said appellant, "signed off" on the green slip. The car which Raymond was buying from appellant was not ready for delivery and appellant testified that for this reason he allowed Raymond to continue his use of the automobile here in issue; that Raymond returned it next morning and delivered it to him and he placed it on his used car lot; that early in the morn-

ing of the 15th of September the car was stolen from his lot and he did not discover its whereabouts until sometime later, after instigating a search for it; that he found it in the possession of respondent who claimed to own it. Appellant introduced in evidence an application for purchase of appellant's used car, which application showed that the proposed deal was one whereby the car in issue here would be turned in at a fixed figure as a part of the down payment to be made by Raymond for the substitute car. This application to purchase was dated September 15th. Appellant testified also that notwithstanding the theft of the car and after he and Raymond had notified the Nevada authorities of the theft and after Raymond had taken steps to collect the insurance on the car deemed stolen, he, Wagner, had proceeded to complete the deal with Raymond, turning over to him the substitute car and issuing a conditional sale contract which showed a down payment for the value of the car in issue here, the payment of $100 in money, and a balance still unpaid. No objection was made that appellant's testimony as to the Nevada registration was not the best evidence, but during the giving of that testimony appellant volunteered that he could produce in court the green slip issued by the State of Nevada. He testified that he did not know of any claim that respondent had as to the car and it is apparent that he, in dealing with Raymond, relied upon the registration of the car in the State of Nevada in the name of Raymond. Appellant rested his case as to ownership upon his testimony as above stated.

Concerning these happenings in Las Vegas respondent testified that she knew nothing of any Nevada registration or of any dealings which Raymond might have had with appellant. She said there were no Nevada plates on the car to her knowledge. She located Raymond at his place of employment in Las Vegas early on the morning of the 15th of September, 1950. She demanded of him that he turn the car over to her. She testified that the car at that time was parked at Raymond's place of employment in an area marked for customer parking, and that it was not upon the used car lot of appellant. She said that Raymond told her to take the car, get out of town with it and not bother him further and this she proceeded to do. Later on, and after the filing of this action, the car was taken from her possession through court process. Appellant and respondent were the sole witnesses at the trial.

At the conclusion of the testimony the court asked counsel if there was any question as to the Nevada registration or as

to the fact of the issuance of the Nevada green slip, commenting that appellant had testified that he could present the green slip if it was wanted. Counsel for the respondent refused to stipulate that the registration was as appellant had testified and requested that he be permitted to see the green slip and that it be filed with the court. Appellant's counsel responded that, while they did not have the green slip in court at that time, yet it was available and would be exhibited to counsel for the respondent and filed with the clerk of the court. The court ordered that this be done and that the case be submitted upon briefs, counsel for the appellant to file first. Considerable time passed and the brief was not filed and the green slip was not produced. Both matters became the subject of correspondence between counsel and the response of counsel for the appellant was that the green slip was not immediately available, but that a certified photostatic copy thereof would be obtained and this or the original would be furnished. Further time passed and this was not done. Finally, counsel for respondent filed in court a motion that the cause be decided and that judgment be rendered in respondent's favor upon her cross-complaint seeking to quiet her title to the automobile. Counsel for the appellant did not appear at the hearing of this motion, although the moving papers had been duly served. At that time the court, having stated for the record the failure of the appellant's counsel to file any brief and failure of appellant or his counsel to furnish the Nevada green slip or other proof of its having been issued, stated that the motion to give judgment in favor of respondent would be granted. Thereafter the court made findings of fact favorable to respondent and entered judgment in accordance therewith.

It is apparent that Raymond Trout, by virtue of the way in which the car was registered in California, could have registered the car in his name in Nevada, and if, having done that, he had thereafter transferred the car to appellant, presenting the Nevada green slip as evidence of his right to do so, the appellant, ignorant of any conflicting claim, would be protected in his title so acquired. But appellant's proof that the car was so registered depended entirely upon appellant's oral testimony. The court found that respondent was at all times the owner of the car and that appellant had no title to and no interest therein. The first question presented on this appeal is whether or not that finding can be supported.

The finding of ownership can be supported upon the testimony of respondent if the effect of appellant's testimony con-

cerning the Nevada registration is not binding upon the trial court. There is no essential conflict in the testimony of the two witnesses. When, however, while orally testifying as to the existence of the Nevada registration evidenced by the Nevada green slip appellant stated that he could produce the green slip and when thereafter, when ordered by the court to do so, he neither produced it nor explained his failure, his conduct cast such doubt upon the veracity of his testimony concerning the registration as to justify the court in disbelieving him and finding in accordance with the testimony of respondent that the California registration, which had never been changed, showed title to be still in herself or Raymond.

The burden was upon appellant to prove the ownership of the vehicle (Code Civ. Proc., § 1981), by the best evidence thereof if that was required (Code Civ. Proc., § 1855) and his failure to produce and file with the court the Nevada green slip upon which he relied justified the trial court in denying credence to his testimony as to his title. As was held in *Blanc* v. *Connor*, 167 Cal. 719, 722 [141 P. 217], it is within the province of a trial court to determine what credit and weight should be given to the testimony of any witness and an appellate court cannot control the trial court's finding or conclusion denying credence to testimony unless it appears that there are no matters or circumstances which at all impair its accuracy. Where such matters do appear a finding of the trial court denying credence to the testimony must be upheld. Said the court, quoting from *Davis* v. *Judson*, 159 Cal. 128 [113 P. 147]:

" . . . ' . . . The most positive testimony of a witness may be contradicted by inherent improbabilities as to its accuracy contained in the witness's own statement of the transaction; or there may be circumstances in evidence in connection with the matter, which satisfy the court of its falsity; the manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement and influence it to disregard his positive testimony as to a particular fact; and as it is within the province of the trial court to determine what credit and weight shall be given to the testimony of any witness, this court cannot control its finding or conclusion denying the testimony credence, unless it appears that there are no matters or circumstances which at all impair its accuracy.' "

We conclude that the general findings of the trial court that respondent, and not appellant, was the owner of the car in question are supported on the theory, however, that

the court did not accept the testimony of appellant as to the fact and contents of the Nevada registration.

The foregoing would be sufficient to dispose of the appeal if it were not for the further and more specific findings made by the trial court responsive to affirmative allegations in respondent's pleadings. Having found generally that the plaintiff was not the owner of the car, and, conversely, that respondent was such owner, the court proceeded to make findings more specific in nature. The court found that the automobile was registered in this state in the names of respondent and Raymond "through the fraudulent conduct of the said Raymond"; that the car was still registered to the two in this state and "that all of these facts were at all times mentioned in the Complaint herein within the personal knowledge of the plaintiff." We fail to find in the record any support for this finding that these matters were within the personal knowledge of the plaintiff. He testified that he knew nothing about the California registration and there is nothing from which such knowledge can be inferred. The court further found "that the registration of said vehicle was procured in Nevada through fraud and plaintiff had knowledge thereof." A fair interpretation of this finding is: 1. That the car had been registered in Nevada, but that the registration was ineffective in support of appellant's title because the Nevada registration had been accomplished through someone's fraud, presumably the fraud of Raymond; and, 2. That the plaintiff had knowledge of that fraud. Again, there is no support in the evidence for the finding that whatever was the fraud of Raymond appellant had knowledge thereof. But by its form the finding indicates that the court believed appellant testified correctly and truthfully in respect of the Nevada registration. As we have said, if that registration was in fact as testified to by appellant, then, there being no support in the record for a finding that appellant knew of any taint of fraud concerning that registration, appellant's title would be made out. The court proceeded further to find that if there was any transfer of the automobile to plaintiff by Raymond said transfer was fraudulent as to respondent in that the transfer was not accompanied by an immediate delivery, followed by an actual and continued change of possession and was therefore void as to respondent who the court found to have been a creditor of Raymond at that time. These findings of fraudulent transfer show no title in respondent. Such a transfer is void as to creditors,

but the invalidity vests no title in the creditor. The creditor by reason of such invalidity obtains no right to the possession of the property transferred. As such defrauded creditor the respondent had various remedies which she could have enforced in order to collect her debt. For instance, she could have attached the property; if her claim as a creditor had been reduced to judgment she could have had the property sold under execution; she could have had an equitable action to have the transfer declared void as to her and the property so transferred subjected to her claims as a creditor. But the fact of fraudulent transfer, invalid as to her as a creditor, invests her with no title. ██ It is declared in 37 Corpus Juris Secundum, ''Fraudulent Conveyances,'' section 316: ''A creditor cannot without legal process appropriate property fraudulently conveyed by the debtor to the payment of his debts.'' ██ Of course the transfer was good as between the parties to it whether or not there was immediate delivery followed by actual and continued change of possession. (*Byrnes* v. *Hatch*, 77 Cal. 241 [19 P. 482]; *Ramirez* v. *Hartford Acc. & Indem. Co.*, 29 Cal.App.2d 193 [84 P.2d 172].) The legal effect, therefore, of the court's findings that the property had been transferred by Raymond to appellant in violation of the provisions of Nevada law is that the title passed to appellant as between Raymond and himself. ██ The fact that it was void as to respondent in respect of her claims as a creditor does not vest in her any title to the property.

██ Returning now to the general finding of ultimate fact that respondent was the owner and appellant was not, it inferentially rests upon a finding that no such registration and transfer as testified to by appellant existed. But this necessary inference is in conflict directly with the finding of the court later that the car had been registered in Nevada. Under these circumstances we deem the findings in such conflict that it cannot be said therefrom, after a consideration of the testimony, what theory the trial court adopted in the rendition of its judgment. If that court accepted the testimony of appellant as to the fact and the form of the Nevada registration then the judgment rests entirely upon the findings concerning the fraud of Raymond in respect of the rights of respondent or upon the findings of fraudulent transfer, which, as we have seen, are not supported by the record or are legally insufficient to support the judgment. If the trial court did not accept that testimony for the

reasons we have hereinbefore discussed then proof of appellant's title disappears and the judgment could be affirmed upon the theory that plaintiff had failed to prove his title. The situation is one which we think necessitates reversal for conflict in the findings.

The judgment is reversed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied April 19, 1954, and respondent's petition for a hearing by the Supreme Court was denied May 27, 1954. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.