In re CHASE & SANBORN CORP. f/k/a General Coffee Corp., Debtor.

Paul C. NORDBERG, as Creditor Trustee, for the Estate of Chase & Sanborn Corporation f/k/a General Coffee Corp., Plaintiff,

v.

NABISCO BRANDS, INC., Colombian Coffee Co., Inc., Domino Investments, Ltd., and John Paul Murphy, as Trustee for Alberto Duque, Defendants.

Bankruptcy No. 83–00889–BKC–TCB. Adv. No. 85–1131–BKC–TCB–A.

United States Bankruptcy Court, S.D. Florida.

Nov. 29, 1985.

Michael J. Pappone, P.C., Peter S. Brooks, Esquire, Goldstein & Manello, Boston, Mass., Ronald G. Neiwirth, Sherman & Fischman, Miami, Fla., for plaintiff.

Burton H. Brody, Nabisco Brands, Inc., New York City, David M. Levine, John W. Kozyak, Lawrence D. Metsch, Miami, Fla., for defendants.

John Paul Murphy, Coral Gables, Fla., Trustee for Alberto Duque.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

The liquidating trustee under a confirmed chapter 11 plan has sued to avoid and recover an alleged preference of $2 million. He has also, in counts 2, 3 and 4, alleged that three other related debtors have no interest in the preference he seeks to recover. One of these three, Domino Investments, Ltd. (count 3) concedes it has no interest. The other two are represented

by creditor spokesmen who assert a claim to the money sought by the plaintiff.

One of these other two related debtors, Colombian Coffee Co., through its special counsel has asserted an amended cross-claim (C.P. No. 23) in the amount of $2 million against Nabisco alleging both actual and constructive fraud under 11 U.S.C. § 548(a)(1) and (2).

At trial all parties agreed that resolution by this court of Colombian Coffee's affirmative defenses and its cross-claim against Nabisco would dispose of all remaining issues which have been tentatively adjusted between all other parties. On this premise, the Colombian Coffee issues were tried on November 21.

The affirmative defenses are that the plaintiff is without legal capacity or authority to maintain an action to recover a preference under § 547 and that no stay relief has been granted by this court under § 362(d) for him to seek relief from the co-debtor, Colombian Coffee.

The first contention has been rejected in a previous decision by this court with which all counsel are familiar. No purpose would be served by repeating that discussion here.

■ The second contention is equally without merit. The confirmation of the Chase & Sanborn liquidation plan, including the specific creation of a liquidating trustee to pursue preference and fraud claims against co-debtors represented by a single law firm and dominated by a single individual, constitutes good cause, as I see it, for stay relief to permit that trustee to initiate that litigation and pursue it in this court.

I believe that Colombian Coffee abandoned its actual fraud allegations under § 548(a)(1). If not, I find that there is no showing of actual fraudulent intent on the part of either Chase & Sanborn or Nabisco.

Colombian Coffee's claim to the $2 million in question here rests upon the following uncontroverted facts:

1. On March 23, 1985 a third party bank issued a letter of credit in the amount of $2,090,000 on behalf of Chase & Sanborn.

2. On the next day it was presented to Banque Worms (which held the Colombian Coffee account) under direction that and with the understanding that $2 million would be immediately credited to the account of Chase & Sanborn (also in Banque Worms) and would then be immediately wired to a third bank for the account of Nabisco in payment of an outstanding account.

The three banks are all in New York. The funds went by wire from the first bank to the second and then to the third on the same day. The $2 million was in Colombian Coffee's account and possession only instantaneously. It was neither intended nor understood to ever have been for the benefit of Colombian Coffee.

■ It is Colombian Coffee's threshold burden under § 548(a) to prove that the $2 million was "an interest of the debtor [Colombian Coffee] in property." The inference of title and ownership which arose from the fact that the money was in its account, however fleetingly, has been shattered by the undisputed circumstances present here. With the exception of the $90,000, all of the letter of credit was never intended for Colombian Coffee and the latter's account was merely a conduit for transmittal of the $2 million to Nabisco. The testimony and documentary evidence is so clear it need not be repeated here.

Section 548(a) is a statutory elaboration of a classic equitable remedy designed to assure that the remaining assets of an insolvent debtor be available to those in good conscience most entitled to these assets. It should not be construed to defeat that purpose. I agree with all the parties, except Colombian Coffee, that the $2 million never constituted "an interest of the debtor" and, therefore, could not have been the subject matter of a fraudulent transfer from Colombian Coffee's estate. *Cf. Sun Railings, Inc. v. Silverman (In re Sun Railings),* 5 B.R. 538, 539 (Bankr.S.D.Fla.1980). I do not consider the facts of *Jones v.*

*J.E.G. Enterprises, Inc. (In re Greenbrook Carpet Co., Inc.),* 22 B.R. 86 (Bankr.N.D. Ga.1982) and *LaRose v. Bourg Insurance Agency (In re Dick Henley, Inc.),* 45 B.R. 693 (Bankr.M.D.La.1985) relied upon by Colombian Coffee, to be sufficiently analogous to the facts here to suggest a contrary conclusion.

It is not necessary, therefore, to reach the remaining elements of a constructive fraudulent transfer.

The plaintiff is directed to submit a judgment in accordance herewith, and incorporating the agreed resolution of all other issues presented by this adversary proceeding. The judgment may include entry of relief by default under count 3 against Domino Investments. Costs may be taxed on motion.