In the Matter of STANDARD LAW ENFORCEMENT SUPPLY CO. OF WISCONSIN, d/b/a Standard Equipment Company, Debtor.

John Louis CASTELLANI, Trustee, Plaintiff,

v.

Clifton G. OWENS, Trustee of Lentech International Corporation, Defendant, Cross-Claim Plaintiff,

v.

FIRST WISCONSIN NATIONAL BANK OF MILWAUKEE, Defendant, Cross-Claim Defendant.

Bankruptcy No. 83–03196.
Adv. No. 84–0196.

United States Bankruptcy Court,
E.D. Wisconsin.

June 3, 1987.

Floyd A. Harris, Polacheck and Harris (George P. Kersten, of counsel, Kersten & McKinnon), Milwaukee, Wis., for plaintiff.

David A. Erne, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C., Milwaukee, Wis., for First Wisconsin Nat. Bank of Milwaukee.

C.N. CLEVERT, Chief Judge.

## DECISION AND ORDER

First Wisconsin National Bank of Milwaukee (First Wisconsin) is seeking dismissal of an action against it by the trustee of Standard Law Enforcement Supply Co. of Wisconsin (Standard) for recovery of $356,800 as a fraudulent conveyance.

The relevant contentions appearing in the pleadings are as follows. On July 7, 1983, Standard transferred $356,800 to its subsidiary, Lentech International Corporation (Lentech), which on or about that same date paid the funds to First Wisconsin. Approximately two months later, on August 29, 1983, Standard filed its Chapter 7 petition, followed on September 8, 1983, by Lentech filing its own Chapter 7 petition. On April 27, 1984, Standard's trustee commenced this adversary proceeding to recover the $356,800 from First Wisconsin, asserting as grounds for recovery that the initial transfer from Standard to Lentech was a fraudulent conveyance within the meaning of 11 U.S.C. § 548.

On August 8, 1984, Lentech's trustee was joined as a defendant, and on September 25, 1984, he cross-claimed against First Wisconsin for recovery of the $356,800 as a preferential payment pursuant to 11 U.S.C. § 547. First Wisconsin, in order to avoid possible liability to both Standard and Len-

tech, has asked this court to dismiss the complaint of Standard's trustee against First Wisconsin for failure to state a claim upon which relief can be granted.

## DISCUSSION

### I.

The central issue for decision is whether a Chapter 7 trustee's right to recover fraudulently transferred funds, pursuant to 11 U.S.C. §§ 548 and 550, is cut off where the initial transferee of the funds has since become a Chapter 7 debtor whose trustee asserts a superior interest in the funds by virtue of his 11 U.S.C. § 544(a) status as a hypothetical judicial lien creditor.

Citing *In the Matter of Dee's, Inc.*, 311 F.2d 619 (3rd Cir.1962), First Wisconsin contends that Standard's trustee's rights to the funds in the hands of First Wisconsin were cut off by the filing of Lentech's petition and the consequent investiture of its trustee with the bona fide purchaser status conferred by 11 U.S.C. § 544. First Wisconsin argues that Lentech's trustee enjoys the status of a bona fide purchaser because Lentech filed its bankruptcy petition before Standard's trustee filed this adversary proceeding. Standard's trustee, also citing *Dee's*, contends that because Standard filed its Chapter 7 petition first, the rights of Standard's trustee to the funds in First Wisconsin's possession are superior to any rights Lentech's trustee might have had.

### II.

Since both parties rely primarily on the *Dees* decision to support their respective positions, that is the logical place to begin our analysis. In *Dee's*, Dion, the sole share-holder of Dee's, Inc. (the corporation), transferred assets to the corporation on January 1, 1957. On March 10, 1958, the corporation filed a petition under Chapter XI of the Bankruptcy Act. Later that day, two of Dion's creditors filed a suit in state court in an unsuccessful attempt to rescind the January 1, 1957, transfer and have an equitable lien imposed against the corporation's assets. One month later, on April 10, 1958, an involuntary petition was filed against Dion personally, and on June 18, 1958, Dion was adjudicated a bankrupt.

Dion's trustee then attempted to reclaim the property Dion had transferred to the corporation on the ground that the transfer was a fraudulent conveyance under state law, thereby rendering the transfer null and void against him pursuant to § 70(e) of the Bankruptcy Act.[1] The corporation's trustee defended on the ground that he had a prior lien on the property because § 70(c) of the Act gave him the status of a hypothetical judicial lien creditor whose interest was deemed to have vested when the corporation's petition was filed.[2] The court agreed with the corporation's trustee, stating that Dion's trustee's rights to the property were cut off because the corporation filed its petition before Dion's creditors sued to recover the property and before Dion's bankruptcy petition was filed. *Id.* at 622.

The heart of the *Dee's* opinion is an analysis of the mutual rights and priorities held by the respective trustees of the transferor (Dion) and the transferee corporation (Dee's). The *Dee's* court begins this analysis by carefully setting forth the sequence of questions that need to be addressed:

> In determining priorities when one trustee is claiming property under Section 70, sub. e and another is defending his right to it under Section 70, sub. c, we

---

**1.** Section 70, Sub. (e) states in part: "A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under the Act, shall be null and void as against the trustee of such debtor."

**2.** The pertinent provisions of Section 70, sub. (c) read: "The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

must look to the law upon which the Section 70, sub. e right is based. First it must be decided whether under that law actual provable claims against the bankrupt exist. Next a conclusion must be reached as to whether that law, i.e., the law on which the Section 70, sub. e right is based, affords a method or way of cutting off these claims. If no method exists for wiping out the power of avoidance vested in the trustee of the bankrupt who made the transfer, then that trustee must prevail. Finally, if a method exists for obliterating the power of avoidance of the transferor trustee then it must be determined whether the status asserted under Section 70, sub. c by the transferee trustee was perfected prior to the establishment of the right of avoidance set up in the transferor trustee by Section 70, sub. e.

311 F.2d at 622.

Addressing the first question, the court assumed for the sake of simplicity that the transferor's claims were "provable."[3]

Responding to the second inquiry, the court turned to the laws of Pennsylvania upon which Dion's trustee based his claim to the property[4] to determine under what circumstances the transferor's claim would be defeated by the superior rights of the transferee. The court found that under Pennsylvania law, "[a] subsequent transferee for value without notice of an outstanding equity or a defect in the title of the transferor, will take the transferred property free of any outstanding claim or equity."[5]  311 F.2d at 622.

Having found, therefore, that "a method exists for obliterating the power of avoidance of the transferor trustee," *Id.* at 622, the court then moved on to the third and last step in its analysis, which was to determine which trustee perfected his rights to the transferred property first. Since the corporation's bankruptcy petition was filed before both the filing of Dion's petition and the commencement of the fraudulent transfer action by Dion's creditors, it was clear to the court that the corporation's trustee's rights to the property were superior. The court stated:

Dee's trustee is in the position of such a transferee [for value without notice of an outstanding equity or a defect in the title of the transferor] for the following reasons.

The sequence of events, found by the Referee in Bankruptcy and not challenged by Dion's trustee, demonstrates that no action was brought on any claim of Dion's creditors in any court, Common Pleas or bankruptcy, until after Dee's petition for an arrangement had been filed. Dion's petition in bankruptcy was filed subsequently to Dee's petition. From this we must conclude that the

---

**3.** Under the former Bankruptcy Act only "provable" claims could be asserted against the estate of the bankrupt, and a claim was provable only if it fell within the types of claims described in § 63(a) of the 1898 Act. As Collier notes, provability and allowability were not identical concepts under the Act. "The questions of allowability depended not only on whether or not the claim was provable but whether or not it was a claim at all, whether it was tardily filed or whether it was legally invalid and the like." 3 Collier on Bankruptcy ¶ 502.01[1] (15th ed. 1987). The 1978 Bankruptcy Code eliminates the concept of provability as a prerequisite for the allowability of a claim, replacing it with the broad definition of a claim found at 11 U.S.C. § 101(4). Similarly, the requirement of former Act § 70(e) that the creditor whose rights the trustee is relying upon be the holder of a provable claim against the debtor's estate has been removed from 11 U.S.C. § 544(b), the successor to § 70(e). *See,* 4 Collier on Bankruptcy ¶ 544.-03[1] (15th ed. 1987).

The *Dee's* court framed the provability question in terms of whether Dion's trustee's § 70(e) claim against the transferee (Dee's) was provable. However, it would appear that the more correct question should have been whether Dion's creditors, upon whose rights under Pennsylvania law Dion's trustee based his § 70(e) action, held provable claims against Dion's estate.

**4.** The trustee's claim was based upon the bulk sales section of the Uniform Commercial Code (Article 6, 12A P.S. § 6–101 et seq.), the Uniform Fraudulent Conveyance Act (39 P.S. § 351 et seq.) and the Statute 13 Eliz. c. 5 (39 P.S. Appendix), each in force in Pennsylvania.

**5.** Bulk Sales provision in the Uniform Commercial Code, 12A P.S. § 6–110; Fraudulent Conveyance Act, 39 P.S. § 359; Statute 13 Eliz. c. 5 (39 P.S. Appendix).

status of Dee's trustee under Section 70, sub. c was *in esse* before any position was asserted by Dion's trustee under Section 70, sub. e. Dion's trustee's outstanding equities, if any, arising from the purported fraudulent transfer, were cut off.

311 F.2d at 622.

Close scrutiny of the *Dee's* decision does not indicate that the court ever addressed the question whether the hypothetical judicial lien creditor status conferred on the corporation's trustee by § 70(c) of the Act placed that trustee in the position of a transferee *for value and without notice.* Instead, the *Dee's* court appears to have focused its attention only upon the timing of the perfection of each trustee's respective rights to the transferred property. Because this court finds that in Wisconsin a judicial lien creditor is not deemed a transferee for value, it declines to adopt the *Dee's* holding as a basis for cutting off the prior fraudulent conveyance claim of the transferor's (i.e. Standard's) trustee.

### III.

Section 548(c) precludes recovery of a fraudulent conveyance, to the extent of value given, from an initial transferee who took for value and in good faith. Section 550(b) extends this protection to good faith transferees for value of the initial transferee. Thus, to cut off the fraudulent conveyance claim by Standard's trustee, Lentech's trustee's § 544(a)(1) status as a judicial lien creditor must place him in the position of both a good faith purchaser *and* a purchaser for value.

#### (1) *Is Lentech's trustee a good faith transferee?*

■ Although § 544(a) vests a trustee with the power to avoid transfers regardless of the trustee's actual knowledge, the trustee is still bound by constructive or inquiry notice. *In re Marino,* 49 B.R. 600, 602 (N.D.Cal.1985); *See also, In re Sandy Ridge Oil Co.,* 807 F.2d 1332 (7th Cir.1986). Constructive notice of a prior fraudulent conveyance claim to the transferred property would be inconsistent with good faith. *See,* 4 Collier on Bankruptcy ¶ 548.07[2] (15 ed. 1987) (where it is stated that "[a]wareness of the fraudulent purpose of a transaction is obviously inconsistent with good faith"). Presumably, had Standard's trustee commenced this action prior to the commencement of Lentech's bankruptcy case, Lentech's trustee would have assumed his status as a judicial lien creditor with constructive notice of the fraudulent conveyance claim of Standard's trustee, and consequently would not have been deemed a good faith transferee. But Standard's trustee did not bring this action before Lentech's Chapter 7 filing, and Lentech's trustee must therefore be deemed a good faith transferee.

#### (2) *Is Lentech's trustee a transferee for value?*

■ Section 544(a)(1) places the trustee in the position of "a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien [on the debtor's property]." Whether this hypothetical extension of credit to the debtor makes the trustee a purchaser for value is determined by Wisconsin law. *In re Fitzpatrick,* 29 B.R. 701, 703 (Bankr.W.D.Wis.1983).

In Wisconsin, a judicial lien creditor is not deemed a purchaser for value because "[he has not parted] with any value in reliance on the misleading state of his debtor's title." *IFC Collateral Corp. v. Commercial Units, Inc.,* 51 Wis.2d 41, 49, 186 N.W.2d 214, 217–18 (1971); *Fitzpatrick,* 29 B.R. at 703. This rule is in accord with the Restatement of Security (1941), which states that "[t]he attaching or levying creditor is not generally considered as one who has given value merely because he obtains by his attachment or levy a lien as a security for his antecedent debt. Such a judgment creditor has not been given security but has taken it by legal process." *Id.* at 34–35.

Upon the foregoing, it must be concluded that the strong arm power of § 544(a)(1) does not confer on Lentech's trustee the status of a transferee *for value.* Consequently, the fraudulent conveyance claim

of Standard's trustee to the funds in First Wisconsin's possession survived the filing of Lentech's petition, and First Wisconsin's motion to dismiss the complaint of Standard's trustee must be denied.

## IV.

 In passing, the court notes that First Wisconsin pursued its motion to dismiss in part to avoid being twice gored by Standard's and Lentech's trustees. In its brief, First Wisconsin argues that § 550(c), by limiting a trustee to a single recovery, protects transferees from having to pay twice where only one payment was received. Section 550(c) states that "[t]he trustee is entitled to only a single satisfaction under subsection (a) of this section." This section is intended to prevent the trustee from recovering damages in addition to the property transferred or its value. *See,* 4 Collier on Bankruptcy ¶ 550.-03[2] (15th ed. 1987). It simply does not address the question whether one transferee may be multiply liable where more than one trustee asserts a right to the transferred property. Therefore, First Wisconsin's argument does not support its dismissal motion.

Nevertheless, the court is cognizant that for Lentech's trustee to succeed on his preference claim against First Wisconsin, he has the threshold burden of proving that the $356,800 was property in which Lentech's estate had an interest. Should further proceedings disclose that the funds were never intended for Lentech's account and that Lentech was only a conduit through which the funds were ultimately transmitted to First Wisconsin, then it may turn out that the funds never became an "interest of the debtor" recoverable by Lentech's trustee under § 547(b). *See, Coral Petroleum, Inc. v. Banque Paribas —London, et al,* 797 F.2d 1351 (5th Cir. 1986); *In re Commodity Exchange Services Co.,* 67 B.R. 313 (N.D.Texas 1986); *In re Chase & Sanborn Corp.,* 55 B.R. 541 (Bankr.S.D.Fla.1985). Additionally, if Standard's trustee successfully proves that the transfer to Lentech was a fraudulent conveyance, there may be grounds for imposition of a constructive trust, (*see, Mason v.*

*Pierron,* 69 Wis. 585, 34 N.W. 921 (1887)), and the consequent exclusion of the trust funds from Lentech's estate pursuant to § 541(d). *See, In re Raschke,* 41 B.R. 182, 186 (Bankr.W.D.Wis.1984). However, the determination of these issues, if they arise, must await further proceedings.

Upon the foregoing,

IT IS ORDERED that the motion to dismiss filed by First Wisconsin National Bank be and hereby is denied.