**In re James Swindell SEXTON, Jr., and Pauline Mary Sexton, Debtors.**

**SOBEL BUILDING DEVELOPMENT PARTNERS, a California general partnership, Plaintiff,**

**v.**

**William H. BROACH, Defendant.**

**Bankruptcy No. 93–41156–TR.
Adv. No. 93–4659 AT.**

United States Bankruptcy Court,
N.D. California.

April 19, 1994.

Mark S. Bostick, Leslie A. Burton, Wendel, Rosen, Black, Dean & Levitan, Oakland, CA, for trustee.

## MEMORANDUM OF DECISION

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

Plaintiff Sobel Building Development Partners ("Sobel") seeks declaratory relief against William H. Broach (the "Trustee") declaring its right to a fund of $71,000 (the "Sale Proceeds") in the Trustee's possession. The Trustee moves to dismiss the complaint for failure to state a claim. For the reasons stated below, the motion is granted without prejudice. Although the two theories pleaded are not legally sufficient, it appears that Sobel is capable of pleading a legally sufficient claim.

### SUMMARY OF FACTS

For the purpose of determining a motion to dismiss for failure to state a claim, all well pleaded allegations of fact in the complaint are presumed to be true. *Russell v. Landrieu,* 621 F.2d 1037, 1039 (9th Cir.1980). The complaint alleges the following facts in support of Sobel's claims for relief:

Prior to the commencement of this bankruptcy case, Sobel leased certain commercial real property to Reps West Sales, Inc. ("Reps West"). The above-captioned debtors (the "Sextons") are the controlling shareholders and officers of Reps West. The Sextons executed a written guaranty in favor of Sobel guarantying Reps West's obligations to Sobel under the lease.

Reps West breached the lease, and Sobel filed an action in San Francisco Superior Court against Reps West and Sobel. On November 25, 1992, Sobel obtained a right to attach order and order for issuance of writ of attachment. On December 1, 1994, notice was given to the bank where both the Sextons and Reps West maintained accounts (the "Bank") to attach any accounts or other property held in either party's name.

Sometime prior to the date the notice of attachment was given, Reps West had liquidated certain real property. The sale pro-

Iain A. MacDonald, San Francisco, CA, for plaintiff.

ceeds—$71,000—(the "Sale Proceeds") were initially placed in the Reps West bank account. Thereafter, also before the notice of attachment was given, the Sale Proceeds were transferred to the Sextons' personal bank account.

Within 90 days from the date the notice of attachment was given to the Bank, the Sextons filed a voluntary petition seeking relief under chapter 7 of the Bankruptcy Code. Reps West has not filed a bankruptcy petition.

## DISCUSSION

### I. DID SOBEL'S ATTACHMENT LIEN SURVIVE THE FILING OF THE SEXTONS' BANKRUPTCY CASE?

■ Section 493.030(b) of the California Code of Civil Procedure provides as follows:

(b) The filing of a petition commencing a voluntary or involuntary case under Title 11 of the United States Code (Bankruptcy) ... terminates a lien of a temporary protective order or of attachment if the lien was created within 90 days prior to the filing of the petition.

There is no dispute about the fact that the Sextons filed a bankruptcy petition within 90 days of the date the attachment lien on the Sale Proceeds was created.

Sobel contends that section 493.030(b) does not apply to the present facts because it was levying the attachment lien on the Sale Proceeds as property held by a third party on behalf of its debtor Reps West. Under this theory, section 493.030(b) presumably would have caused the automatic termination of the lien if Reps West had filed a bankruptcy petition within 90 days from the date the lien was created. Sobel also notes that the fraudulent transfer statute specifically authorizes a creditor wishing to avoid a fraudulent transfer to attach the fraudulently transferred property. *See* Cal.Civ.Code § 3439.07(a)(2) (West 1994).

Both of these arguments fail. As noted by the Trustee, in order to levy a writ of attachment on a deposit account standing in the name of someone other than the defendant, the plaintiff must first obtain a court order authorizing the levy. Cal.Civ.Proc.Code § 488.465 (West 1994). A copy of this order must be served on the third party at the time a copy of the notice and the writ is served. The plaintiff must then wait 15 days to permit the third party to claim the property as its own. If no such claim is filed, the creditor may then direct the levying officer to serve the financial institution where the account is maintained. Sobel failed to follow any part of this procedure. Instead, the writ of attachment was levied pursuant to Sobel's claim against the Sextons on the guaranty.

■ Sobel has also failed to establish that its writ of attachment on the Sale Proceeds was obtained pursuant to section 3439.07(a)(2). That statute makes its clear that an attachment lien is only authorized after an action to avoid the fraudulent transfer has been filed. The complaint filed by Sobel against Reps West and the Sextons did not seek to avoid a fraudulent transfer. The complaint sought a money judgment against Reps West for rent and against the Sextons on the guaranty.

■ Sobel raises no cogent argument why it should be deemed to have levied its writ of attachment on the Sextons' account as property of Reps West in the name of a third party despite having failed to follow the proper procedures for doing so. In response to the Trustee's second argument, however, Sobel urges that section 3439.07(b) of the California Civil Code permits its writ of attachment to be treated as a writ levied pursuant to an attempt to avoid a fraudulent transfer. Section 3439.07(b) provides as follows:

If a creditor has commenced an action on a claim against a debtor, the creditor may attach the asset transferred or its proceeds if the remedy of attachment is available in the action under applicable law and the property is subject to attachment in the hands of the transferee under applicable law.

This statute does little for Sobel's cause. It does not prescribe the procedure for obtaining the writ of attachment in the hands of the transferee. In the absence of an alternative procedure, the creditor must still follow the procedures prescribed for levying on

property held in the name of someone other than the defendant in the action. Thus, Sobel's failure to follow the procedures specifically required by section 488.465 still prevents it from establishing that Sobel's writ was levied upon this basis.

## II. SOBEL'S RIGHT TO SALE PROCEEDS UNDER CONSTRUCTIVE TRUST THEORY

■ As an alternative to its claim that its attachment lien survived the filing of the bankruptcy petition within 90 days of the date the attachment lien was created, Sobel contends that it is entitled to claim the Sale Proceeds pursuant to a constructive trust. The Trustee contends that Sobel is not entitled to a constructive trust. The Court agrees.

■ To obtain a constructive trust, a party must establish three elements: (1) a trust res, (2) the plaintiff's right to the trust res, and (3) that the defendant gained the res wrongfully. *United States v. Pegg,* 782 F.2d 1498, 1500 (9th Cir.1986). *See also In re Unicom,* 13 F.3d 321 (9th Cir.1994).

Sobel can establish only two of these elements. The Sale Proceeds are clearly an appropriate trust res. The Sextons also clearly gained the Sale Proceeds wrongfully. However, Sobel cannot establish its right to the trust res.

■ Two problems confront Sobel. First, only the equitable owner of the trust res may obtain a constructive trust, not a creditor of the equitable owner. Cal.Civ. Code §§ 2223, 2224 (West 1994). *TWM Homes, Inc. v. Atherwood Realty & Inv. Co.,* 214 Cal.App.2d 826, 850, 29 Cal.Rptr. 887

(1963). Thus, only Reps West would be entitled to a constructive trust under any circumstances. Second, under these facts, even Reps West is not entitled to a constructive trust. It is barred from such a remedy by the doctrine of unclean hands. *Samuelson v. Ingraham,* 272 Cal.App.2d 804, 806–07, 77 Cal.Rptr. 750 (1969).

*United States v. Pegg,* 782 F.2d 1498 and *Unicom,* 13 F.3d 321 are distinguishable on both grounds. In each case, the party seeking the constructive trust was the equitable owner. Additionally, in each case, the party who transferred the property was not subject to any equitable bar.[1]

■ Sobel argues that it is entitled to a constructive trust on the Sale Proceeds under section 2224 of the California Civil Code. Section 2224 provides:

> One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for *the benefit of the person who would otherwise have had it.* (Emphasis added.)

Sobel contends that it is a person who would otherwise have had the Sale Proceeds within the meaning of Section 2224.[2]

This contention was expressly rejected in *TWM Homes,* 214 Cal.App.2d 826, 29 Cal. Rptr. 887. In *TWM Homes,* a creditor was unable to avoid a transfer as fraudulent because the transfer in question required the debt to have been incurred before the transfer was made. The court found that the creditor's debt had not been incurred until

---

1. In *United States v. Pegg,* 782 F.2d 1498, the property in question was transferred by mistake. The United States had agreed to sell Pegg a vacant lot for $1,000 but mistakenly gave him instead a deed to an adjacent improved lot worth much more. After learning of the mistake, Pegg sold the property to a third party for a handsome profit. In *Unicom,* 13 F.3d 321, the property in question had been received by the debtor by mistake, and the debtor transferred the property to the creditor who was supposed to receive it to correct the mistake. The Court concluded that this transfer did not constitute a preference because the debtor was not transferring its own property.

2. By contrast, § 2223 provides:

   > One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the *owner.* (Emphasis added.)

   The difference between the wording of these two statutes—§ 2223 applying when property is wrongfully "detained", Section § 2224 applying when property is wrongfully "gained"—is presumably based on the conclusion that it would be inappropriate to call one seeking to impose a constructive trust on property wrongfully "gained" by another the "owner" of the property.

after the transfer was made. As an alternative theory, the creditor sought to impose a constructive trust on the ground that the transfer by the corporation—the creditor's debtor—to the corporate officers constituted a breach of fiduciary duty giving rise to a constructive trust. As in the instant case, the creditor argued that it qualified as a person "who would otherwise have had" the property. The court held that this phrase meant the corporation, not the corporation's creditor. *Id.*

■ A beneficiary of a constructive trust has a direct interest in the trust res. By contrast, a creditor that succeeds in causing a fraudulent transfer to be avoided merely causes the property to be reconveyed to the transferor. The creditor must then cause the property to be sold, either by execution of its money judgment or by other judicially ordered sale, and the proceeds of the sale applied to satisfy its judgment. The creditor may not be awarded the property by judicial decree. *Wagner v. Trout,* 124 Cal. App.2d 248, 254, 268 P.2d 537 (1954); *Wright v. Salzberger,* 121 Cal.App. 639, 9 P.2d 860 (1932).

## III. RIGHT OF CREDITOR OF FRAUDULENT TRANSFEROR TO AVOID TRANSFER AFTER COMMENCEMENT OF BANKRUPTCY CASE BY TRANSFEREE

■ In response to the Trustee's motion, Sobel raises a third claim which has not yet been pleaded. Sobel contends that it is entitled to avoid the fraudulent transfer by Reps West regardless of whether it retains an attachment lien or holds a constructive trust in the Sale Proceeds. It bases this contention primarily on *Standard Law Enforcement Supply Co. of Wisconsin,* 74 B.R. 608 (Bankr.E.D.Wis.1987).

In *Standard Law Enforcement,* a corporate debtor had fraudulently transferred property to its subsidiary which had transferred it in turn to its creditor. Both parent and subsidiary had then filed bankruptcy petitions. The trustees in both cases were attempting to recover the property transferred from the subsidiary's creditor, the parent trustee on a fraudulent transfer theory, the subsidiary trustee on a preference theory. The subsidiary trustee contended that his powers under section 544(a)(1) gave him a defense to the fraudulent transfer action under section 548(c) of the Bankruptcy Code.[3] In support of this contention, the subsidiary trustee cited *Matter of Dee's, Inc.,* 311 F.2d 619 (3d Cir.1962) and *Matter of Gruber Industries,* 345 F.Supp. 1076 (E.D.N.Y.1972).

*Dee's* and *Gruber Industries,* both of which were decided under the Bankruptcy Act, presented similar conflicts. In *Dee's,* the bankruptcy trustee of a fraudulent transferor filed a petition for reclamation against the bankruptcy trustee of the transferee, seeking to recover fraudulently transferred property. The *Dee's* court noted that, pursuant to Section 70c of the Bankruptcy Act, the transferee trustee had the rights and powers of a hypothetical judgment lien creditor.[4] It further noted that, under Pennsylvania law, a subsequent transferee for value without notice of any defect in title took fraudulently transferred property free from any claim of the transferor's creditor, the position being asserted by the transferor trustee. The *Dee's* court then considered whether the transferee trustee could qualify as a transferee in good faith. It concluded that the transferee trustee could so qualify because no fraudulent transfer action had been filed nor had a bankruptcy petition been filed by the transferor at the time the transferee's bankruptcy petition was filed. Thus, the transferee trustee had no constructive notice of any defect in title.

In *Standard Law Enforcement,* the court criticizes the failure of the *Dee's* Court to consider carefully whether a judgment lien creditor is a subsequent transferee *for value.*

---

**3.** Section 548(c) of the Bankruptcy Code provides that:

... a transferee ... [of a fraudulent transfer] that takes for value and in good faith has a lien on or may retain any interest transferred ... to the extent that such transferee gave value to the debtor in exchange for such transfer....

**4.** The substance of Section 70c of the Bankruptcy Act is now contained in Section 544(a) of the Bankruptcy Code.

It concludes that, under Wisconsin law at least, although a judgment lien creditor could qualify as being in good faith, it could not qualify as a transferee for value. The Court notes the distinction between a mortgage or personal property security interest, which is considered to have been *given for value,* and a judgment lien, which is considered to have been *taken pursuant to legal process. Standard Law Enforcement,* 74 B.R. at 612.

■ Sobel is not entitled to proceed under section 548 of the Bankruptcy Code. Thus, section 548(c) is not itself relevant to this case. However, section 3439.08(a) of the California Civil Code contains a comparable provision:

A transfer or an obligation is not voidable under subdivision (a) of Section 3439.04, against a person who took in good faith and for a reasonably equivalent value or *against any subsequent transferee* or obligee. [Emphasis added.]

Sobel argues that, under California law as under Wisconsin law, a judicial lien creditor is not a transferee for value and in good faith. *Wells Fargo Bank v. PAL Investments, Inc.,* 96 Cal.App.3d 431, 157 Cal.Rptr. 818 (1979). Additionally, one may distinguish the two categories of claimants on the ground that a transferee in good faith for value gave that value in reliance on the transferee's ostensible title to the property whereas an attachment or judgment lien creditor did not.

The Trustee concedes that he does not qualify as a person who took in good faith and for reasonably equivalent value. However, he contends that he qualifies as a subsequent transferee within the meaning of section 3439.08(a). He cites *Matter of Dee's, Inc.,* 311 F.2d 619, 622 (3d Cir.1962) in support of this contention. He also cites *Roesman v. DeHart,* 80 Cal.App.2d 737, 742, 182 P.2d 263 (1947) for the proposition that a creditor who has obtained a judgment lien on property fraudulently transferred is entitled to retain the lien if the property is reconveyed. Neither link in this logical chain bears scrutiny.

■ Although the Court acknowledges some ambiguity in the statute's use of the phrase "subsequent transferee," the Court concludes that section 3439.08(a) cannot reasonably be read to apply to the Trustee. Clearly, the Sextons, in whose shoes the Trustee stands, are the initial transferees of the fraudulent transfer, not subsequent transferees. Moreover, the Court understands section 3439.08(a) to provide a defense to a subsequent transferee only if its transferor (or someone earlier in the transfer chain) received its transfer in good faith and for reasonably equivalent value. A parallel approach is taken in section 550(b) with respect to a subsequent transferee of an immediate or mediate transferee who takes for value, in good faith, without knowledge of the voidability of the transfer. The *Dee's* court does refer to the transferee's trustee as a subsequent trustee. *See Matter of Dee's,* 311 F.2d at 622. However, this appears to be a slip of the tongue. It is clear from the recitation of the facts in that case that the transferee trustee is the initial transferee.

*Withrow v. National Surety Co.,* 122 Cal. App. 242, 10 P.2d 83 (1932), which is cited in *Roesman v. DeHart,* does support the Trustee's position. However, it does not appear to reflect the current state of the law. In *Roesman,* the Court rejected a creditor's contention that its claim followed property fraudulently transferred and then voluntarily reconveyed. In doing so, it distinguished *Withrow,* in which a creditor of the transferee had obtained an attachment lien on the property before its reconveyance and was permitted to retain the lien after the property was reconveyed.

However, *Withrow* was decided under the common law, before the enactment of the Uniform Fraudulent Transfer Act or its predecessor, the Uniform Fraudulent Conveyance Act. Section 3439.08 of the California Civil Code now governs the extent to which a transferee of fraudulently transferred property may claim a defense to an avoidance action. This statute contains no defense for an attachment or judgment lien creditor of a transferee.

■ Finally, the Trustee contends that Sobel's claim for avoidance of the fraudulent transfer is nothing more than an unsecured claim against the estate. Any attempt to

assert that claim, other than by filing a proof of claim, is barred by the automatic stay. Sobel does not respond directly to this argument. Nevertheless, the Court concludes that it has no merit.

Section 362(a) of the Bankruptcy Code provides, in pertinent part, that a bankruptcy petition operates as a stay of the commencement of a judicial "proceeding against the debtor that was or could have been commenced before the commencement of … [a bankruptcy case] or to recover a claim against the debtor that arose before the commencement of the case…." However, the automatic stay does not bar the filing of an adversary proceeding in the bankruptcy court where the bankruptcy case is pending seeking a declaration that property claimed as property of the bankruptcy estate in fact belongs to a third party and should be transferred back to that third party. *In re North Coast Village, Ltd.,* 135 B.R. 641 (9th Cir. BAP 1992); F.R.Bankr.P. 7001(2).

### CONCLUSION

The Trustee's motion to dismiss is granted without prejudice. Neither of Sobel's claims pleaded to date states a legally sufficient claim. However, the Court agrees that, under these facts, it appears that Sobel may be able to avoid the transfer of the Sale Proceeds as a fraudulent transfer under sections 3439.04(a) or 3439.05. Counsel for Sobel is directed to submit a proposed form of order in accordance with this Memorandum. The order shall provide that Sobel shall file and serve an amended complaint within twenty days from the date of the order.

